(No. 53339)

THE FIRST NATIONAL BANK OF CHICAGO, Trustee, v. CANTON COUNCIL OF CAMPFIRE GIRLS, Inc., *et al.,* Appellees (Board of Trustees of the Canton Park District, Appellant).

*Opinion filed May 22, 1981.—Rehearing denied October 19, 1981.*

Biggam, Cowan & Lunding, of Chicago (Edward V. Scoby, of counsel), for appellant.

Defrees & Fiske, of Chicago, and Baymiller & Christison, of Peoria (Richard E. Voland, Edward J. Griffin, Marvin S. Helfand, John K. Silk, and John M. Cregor, Jr., of counsel), for appellee Kickapoo Council of Girl Scouts.

MR. JUSTICE RYAN delivered the opinion of the court:

In an *inter vivos* trust, William Ingersoll provided that at his death certain income be paid to the Girl Scouts of Canton, Illinois. The trust also provided that the portion of the income of the trust payable to any organization that ceased to exist was to be paid to the Canton Park District. Since no Girl Scout troops met regularly in Canton at the time of Ingersoll's death, the trustee filed suit in the circuit court of Cook County, seeking instructions as to how to dispose of that share of the income. The court directed the income be paid to the Canton Council of Campfire Girls. The appellate court, with one justice dissenting, reversed and directed the income be paid to the Kickapoo Council of Girl Scouts. (81 Ill. App. 3d 932.) We granted the Canton Park District leave to appeal under our Rule 315 (73 Ill. 2d R. 315).

The share of the income in question under the trust was to be paid to the "Girl Scouts of Canton, Illinois." As above indicated, if the organization ceased to exist, the income was payable to the Canton Park District. The trustee in its suit suggested three possible recipients as defendants: the Kickapoo Council of Girl Scouts, the

Canton Council of Campfire Girls, Inc., and the board of trustees of the Canton Park District.

On May 23, 1949, Ingersoll executed his original trust agreement. Under the agreement, the settlor reserved for himself both the income from the trust during his life, as well as the power to amend the trust. Upon his death much of the income of the trust was to be divided among various charitable beneficiaries. Aware that the name ascribed to a certain charity may be a misnomer, the settlor inserted the following into the agreement:

"The Donor does not have available the correct corporate name of the organizations referred to above and has used the name by which they are commonly known in the locality which they serve. It is the Donor's intention that payments be made to the legal corporation regardless of what its name may be which is in the judgment of the trustee, commonly known by the name used herein."

On December 14, 1956, Ingersoll amended the trust. Among other changes, he added the Girl Scouts of Canton, Illinois, to the list of charitable beneficiaries. It was to receive $5,000 per year. On September 28, 1959, Ingersoll again amended the trust. He increased the amount of the gift to the Girl Scouts of Canton, Illinois, to $10,000 per year.

Between 1959 and 1967 Ingersoll amended the trust several more times. As a result, on May 31, 1967, the settlor again changed the trust and on this occasion executed a totally new trust instrument. He also changed the benefit each charity would receive from a dollar amount to a percentage of the net income of the trust. Under this instrument, the Girl Scouts of Canton, Illinois, was to receive 5% of the income. Ingersoll died in 1973.

Girl Scouting began in Canton in 1947. Until 1951 it functioned as a "lone troop," associated only with the national office of the Girl Scouts of America. In 1951, however, Girl Scouting in Canton came under the authority of a regional council. This council, the Kickapoo

Council of Girl Scouts, was headquartered in Peoria. It eventually became responsible for Girl Scouting activities in a 10-county area. Girl Scouting flourished in Canton during most of the 1950's. By 1959, there were several troops in Canton, comprised of girls from Canton and surrounding areas.

In 1959, following a disagreement between Canton troop leaders and representatives of the Kickapoo Council, the Canton troop leaders, as well as the girls belonging to those troops, resigned. They then joined the Campfire Girls, establishing their own council in Canton. The Campfire Girls provides services similar to those rendered by the Girl Scouts. After this rift, Girl Scouting ceased to exist in Canton, except for one senior troop which briefly continued in a nearby town. This, too, ceased by the middle 1960's.

Since that time, Canton girls wishing to join the Girl Scouts have joined troops which met in other towns. Attempts to recruit leaders and members from Canton have been unsuccessful. The Kickapoo Council continues to have jurisdiction over Canton for any Girl Scout activities that may be instituted. There has never been an association whose legal name was the Girl Scouts of Canton, Illinois.

After a trial without a jury, the court found that through this gift Ingersoll intended to benefit the young ladies of Canton and that the jurisdiction and background of the Campfire Girls make it the only group which could achieve the settlor's intent. As a result, the trial court directed that the Campfire Girls receive the trust income.

On appeal, the appellate court reversed the circuit court, finding that the Kickapoo Council, although inactive in Canton, continued to exist as the sole legal authority for the Girl Scouts in that area. As a result, the court held it to be the sole organization entitled to the income from the trust.

The Campfire Girls has abandoned any claim to the gift and by a motion filed in this court has adopted the brief of the Canton Park District, and opposes the payment of the money to the Kickapoo Council of the Girl Scouts.

The Canton Park District contends that the organization known as the Girl Scouts of Canton, Illinois, no longer exists. It contends that Ingersoll had always had a great affinity for the people of Canton, and all but a very few of the charities to which he donated were located in Canton. The park district argues that the same intent was true regarding the Girl Scouts. He wanted the gift to go to the scouting organization in Canton, not one covering central Illinois. Since the early 1960's there has been no Girl Scout troop in Canton. As a result, the donor's intent to benefit Girl Scouts in Canton cannot be achieved. The gift over in favor of the Canton Park District, it is argued, must take effect.

The Kickapoo Council, on the other hand, argues that the appellate court was correct in awarding the share in question to it. It argues that Ingersoll made it clear in the trust that he wanted the money to go to the group commonly known as the Girl Scouts of Canton, Illinois. He did not want the fact that he was unaware of the legal name to defeat his intent. In 1956, when the Girl Scouts was first mentioned in the trust, the Canton group was already part of the Kickapoo Council. The Kickapoo Council contends that it remains the only legal entity which can satisfy the intention expressed by Ingersoll. Since it continues to exist, it is argued that the Kickapoo Council is entitled to the income.

The trial court, applying *cy pres*, awarded the proceeds in question to the Canton Council of Campfire Girls. *Cy pres* may be applied in cases involving a charitable beneficiary where the charity intended to receive a gift no longer exists, and where the settlor evidenced a

general charitable intent. In such a case the court will award the gift to the charity which would most closely achieve the settlor's intent. (*In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 389; *Village of Hinsdale v. Chicago City Missionary Society* (1940), 375 Ill. 220, 233.) This assumes, of course, that the settlor did not provide for an alternative disposal of the gift upon a failure of beneficiary. (*Village of Hinsdale v. Chicago City Missionary Society* (1940), 375 Ill. 220; see generally Restatement (Second) of Trusts sec. 413, at 348 (1959).) The trust provides:

> "To the CANTON PARK DISTRICT, Canton, Illinois, for the general use of the Park District, Fifteen percent (15%), and the portion of the income payable to any of the above organizations which shall cease to be in existence at any time."

Thus the provisions in the trust for payment to the Canton Park District in the event an organization ceases to exist precludes the application of *cy pres* and the awarding of the disputed gift to the Canton Council of Campfire Girls.

The court's primary concern in construing a trust is to discover the settlor's intent, which the court will effectuate if it is not contrary to law or public policy. (*2416 Corporation v. First National Bank* (1976), 64 Ill. 2d 364, 371; *United States Trust Co. v. Jones* (1953), 414 Ill. 265, 270.) The settlor's intent is determined as of the time the instrument is executed. See *Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124; *Weir v. Leafgreen* (1962), 26 Ill. 2d 406; see generally 76 Am. Jur. 2d *Trusts* sec. 17, at 266 (1975).

In construing trusts in this regard the court will apply the same rules of construction that are applicable in construing wills. (*Storkan v. Ziska* (1950), 406 Ill. 259, 263; see generally 76 Am. Jur. 2d *Trusts* sec. 17, at 264 (1975); 35 Ill. L. & Prac. *Trusts* sec. 81, at 268 (1958).) Where an

instrument has been reexecuted, the intent is determined in light of circumstances existing as of the date of the reexecution. (See generally 79 Am. Jur. 2d *Wills* sec. 696, at 776 (1975).) In determining that intent the court must consider the plain and ordinary meaning of the words used (*Bergendahl v. Stiers* (1956), 8 Ill. 2d 257; *Storkan v. Ziska* (1950), 406 Ill. 259), and the intent must be ascertained by considering the entire document. (*Ford v. Newman* (1979), 77 Ill. 2d 335; *Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124.) If the intent may be gathered from the language of the document without reference to rules of construction, there is no need to use them. (*Wiener v. Severson* (1957), 11 Ill. 2d 347.) The court may also consider the surrounding circumstances at the time the instrument was executed, to the extent they may aid in determining the settlor's intention in using certain language. (*Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124.) Where an ambiguity exists as to the identity of a beneficiary, extrinsic evidence is admissible. *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382; *Board of Education v. City of Rockford* (1939), 372 Ill. 442; *Hitchcock v. Board of Home Missions* (1913), 259 Ill. 288.

Reference to the Girl Scouts first appeared in the trust instrument in 1956. Two subsequent amendments also mention the Girl Scouts. On May 31, 1967, there was a reexecution of the trust instrument.

The language of the instrument stated:

> "In order to avoid confusion and the need for reference to several documents, the Donor hereby restates said instrument in its entirety by striking, deleting and annulling Articles I to III, both inclusive, of said instrument, as amended, and by substituting in lieu thereof the following new Articles I to V:"

Previous references to the Girl Scouts were contained in Article II. That was thus annulled and superseded by the amendment of 1967. The settlor's intent, therefore, will

be determined as of 1967 and from the 1967 instrument.

The words "Girl Scouts of Canton, Illinois" can be given two interpretations: The settlor wished to benefit either the Girl Scout troops in Canton, or the Girl Scout organization which had authority for Girl Scouting activities in that part of Illinois. The former benefits the girls of Canton, while the latter benefits the organization sponsoring these activities.

We are unable, from the plain meaning of the language used alone, to ascertain the settlor's intent. As previously mentioned, at the time of the execution of the 1967 instrument, no group existed which was known, either commonly or legally, as the Girl Scouts of Canton, Illinois, and no Girl Scout troop existed in Canton at that time. However, the Kickapoo Council of Girl Scouts had general authority for all Girl Scouting activities in that part of the State. If the settlor wished to benefit only Girl Scout troops of Canton, that intention cannot be achieved. If, however, he intended to generally benefit the Girl Scout organization, then the "Girl Scouts of Canton, Illinois" continues to exist for purposes of the trust.

In ascertaining intent, consideration is not limited to the language of a particular phrase, sentence, or clause. The language must be considered in light of the entire instrument. (*Williams v. Fulton* (1954), 4 Ill. 2d 524, 528.) In analyzing the 1967 instrument, it is apparent that the settlor intended to limit his gifts to organizations of the Canton area. Article IV of that instrument, which contains the provision in question, makes gifts to 17 charitable organizations. Of these, 16 were located in Canton. The other gift was to the Boy Scouts of America, Creve Coeur Council, with headquarters in Peoria. However, it was specified that this gift "be used for maintenance, development and furtherance of the Boy Scout Camp, which is maintained by said council at or near London Mills, Illinois." London Mills is located in the

northern part of Fulton County, and the camp is about 20 miles from Canton. This makes its facilities conveniently available for use by Boy Scouts residing in Canton. It should also be noted that of the 17 charitable gifts listed in this clause of the trust instrument two others were to local chapters of national organizations. They were: "to the Salvation Army, Canton, Illinois" and "to American Red Cross, Canton Chapter." However, in each of these gifts there was the provision: "for use only in Canton, Illinois and Fulton County, Illinois." The scheme of Ingersoll's philanthropy was clearly to benefit the residents of Canton and Fulton County. We will therefore construe his gift to the Girl Scouts of Canton, Illinois, to conform to this scheme.

At the time the settlor originally inserted the provision for a gift to the Girl Scouts of Canton, Illinois, in the trust instrument, several Girl Scout troops were in existence in that city at that time. When Ingersoll executed the 1967 trust instrument, there were no local Girl Scout troops in Canton. We do not view this circumstance as indicating an intention that the gift, which previously would have been for the benefit of the girls in Canton, should now be for the benefit of Girl Scouting in the entire Kickapoo Council area. The charitable beneficiaries of the trust would receive no income therefrom until after the death of the settlor. In the event Girl Scout troops were again organized in Canton before that event, the gift would not fail. Inasmuch as this did not occur and the group intended to be benefited by the gift did not exist when the gift was to become effective, the provision for the gift over to the park district must take effect. We conclude that it was not the intent of Ingersoll that the share of his trust designated to be paid to the Girl Scouts of Canton, Illinois, be paid to the Kickapoo Council of Girl Scouts.

At the trial an offer of proof was made by the Kickapoo Council after the court had sustained an objection to

evidence concerning a conversation between Ingersoll and representatives of Kickapoo Council. The offer was to the effect that in 1951 or 1952 representatives of the Council visited Ingersoll for the purpose of soliciting funds for Kickapoo Council and for its camp. Ingersoll allegedly stated "I would prefer to see that the money [presumably his money] went to central Illinois and not to any national organizations." He was then informed that he could leave money specifically to Kickapoo Council as opposed to the Girl Scouts of the United States of America. Objections were made to this testimony on the grounds that it violated the Dead Man's Act (Ill. Rev. Stat. 1975, ch. 51, par. 2); that it was hearsay, and that a statement made prior to the execution of the trust instrument was not admissible to show the settlor's intent. The trial court sustained the objection but would not specify the reason for doing so. The appellate court found that the trial court erred in not receiving the evidence but also found it unnecessary to consider the question since it ruled in favor of the Kickapoo Council on other grounds. The Kickapoo Council in this court refers to the exclusion of this evidence only in a footnote and has not requested this court to take any action in regard to the trial court's ruling. Since this question has not been briefed or argued we will not pass on the correctness of the trial court's ruling. However, even if the objections to this testimony had not been sustained, the evidence offered would not change our finding that Ingersoll intended to benefit the Girl Scouts of Canton and not the Kickapoo Council. In fact, the offered evidence would seem to strengthen that conclusion. The conversation occurred in 1951 or 1952. The first time Ingersoll mentioned the Girl Scouts of Canton in his trust was in his amendment executed December 14, 1956, some four or five years after the alleged conversation. In spite of the fact that he had been specifically solicited to leave money to the Kickapoo Council of Girl Scouts,

he did not do so, but, instead, in the 1956 amendment to the trust instrument and in the revised trust instrument executed in 1967, he directed that the money be paid to the Girl Scouts of Canton, Illinois, and did not mention the Kickapoo Council of Girl Scouts.

The appellate court opinion, in coming to a contrary conclusion, places great emphasis upon *Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966. Similar to the case at bar, *Winona* dealt with a trustee seeking instruction as to a trust provision. The provision in question stated:

> "[T]he entire residue shall be conveyed, transferred and assigned to WINONA LAKE SCHOOL OF THEOLOGY, INCORPORATED, Winona Lake, Indiana, or to any corporate successor of said corporation which shall then be the owner of the real estate and improvements at Winona Lake, Indiana, now owned by said corporation, and which shall then be operating and conducting a school of theology at that location." (*Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 970.)

Although the Winona school continued to exist and retained ownership of the assets in question, it terminated those aspects of its program associated with the theology school in 1970. It was argued in *Winona* that, with the termination of the theology school, it ceased to exist from the standpoint of the trust. The court in that case found that where the object of a gift continued to exist, albeit in a semi-moribund condition, that charity will still receive the gift. (*Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 972.) Unlike in *Winona,* in our case the organization which was to receive the gift does not exist. Therefore, the alternate use for the gift must be considered.

The appellate court in the case at bar concluded that, like the charity in *Winona,* the Kickapoo Council was in a semi-moribund condition. Nonetheless, it continued to exist and was the only legal corporation that could satisfy

the settlor's desire to leave a gift to the Girl Scouts. Since the Kickapoo Council had authority for Canton area Girl Scouting, and since it continues to exist, the appellate court held that the Council should receive the trust income.

There is a significant difference between *Winona* and the case at bar. There was no question in *Winona* as to the institution that was to receive the gift. Only one group existed which matched the name and description provided in the trust. The settlor clearly intended the benefit to go to the Winona Lake School of Theology. If Winona Lake School existed in any form, it was to receive the gift.

In our case, on the other hand, the settlor's intent as to what charity is to receive the gift is questioned. Thus we must determine the settlor's intent, as well as whether any group satisfying that intent continues to exist. We do not find *Winona* apposite. Ingersoll never intended to benefit Kickapoo Council of Girl Scouts but the Girl Scouts of Canton, Illinois. Thus the fact that the Kickapoo Council continues to exist in no way justifies its claim to the income from the trust.

It is clear that the organization intended to receive the gift does not exist. Consequently, that portion of the Ingersoll trust income designated to the Girl Scouts of Canton, Illinois, must be paid, as directed by the gift over, to the Canton Park District. We therefore reverse the judgment of the appellate court and the judgment of the circuit court of Cook County and remand the cause to the circuit court of Cook County to enter judgment in accordance with the views expressed herein.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.