682 N.E.2d 284 (1997)
289 Ill. App.3d 589
224 Ill.Dec. 723
In re the ESTATE OF Alice Lee McINERNY, a Disabled Person (Alicia M. Winkelman, Petitioner-Appellant,
v.
First National Bank of Evergreen Park, Respondent-Appellee.)
No. 1-95-1461.
Appellate Court of Illinois, First District, Fourth Division.
June 26, 1997.
Nunc Pro Tunc March 27, 1997.
*285 Deborah L. Helms, Willowbrook, for Petitioner-Appellant.
Buikema, Hiskes, Dillner, O'Donnell & Marovich, Ltd. (John C. Voorn, of counsel), Orland Park, for Respondent-Appellee.
Justice BURKE delivered the opinion of the court:
Petitioner Alicia Winkelman (Winkelman), guardian of Alice Lee McInerny (Alice), the beneficiary of a discretionary supplemental trust with a spendthrift provision, appeals from an order of the circuit court dismissing her petition for fees for herself as guardian and fees for the guardian's attorney. On appeal, Winkelman contends that the trial court erred in dismissing her petition because "guardianship fees are statutorily compensable and the nature of the Trust has been deviated." For the reasons set forth below, we affirm.
On August 16, 1993, John F. McInerny (John) executed a declaration of trust. The trust named John as trustee during his lifetime, and provided that after his death, trust funds were to be distributed as indicated in the trust instrument. Specifically, the trust provided that, upon John's death, certain lump sum payments were to be disbursed to various individuals. The trust also provided for the needs of John's daughter, Alice Lee McInerny, as follows:
"I. Commencing with my death and during the life of my daughter, ALICE LEE MC INERNEY [sic], the trustee shall expend such amounts from income and, to the extent necessary, from principal, as the trustee in the trustee's sole discretion deems desirable for the comfort of ALICE LEE MC INERNEY [sic], taking into consideration other income and cash resources known to the trustee to be available for such purposes, it being my intent that the trust property shall be used to provide ALICE LEE MC INERNEY [sic] with supplemental care above and beyond the care she was receiving at my death and thereafter becomes eligible to receive by reason of both her disability and her personal lack of assets from any state, federal or private agency that provides services or benefits to disabled persons. Any income not so spent shall be accumulated and from time to time added to principal."
The trust further provided that at Alice's death, "any interest in the fund not effectively disposed of pursuant to the [trust] provisions *286 [should] be distributed" to John's nephew, Robert Harney, and John's son, William, in equal portions. The trust also contained the following provision:
"The interests of beneficiaries in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support or other, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. This provision shall not limit the exercise of any power of appointment."
On December 11, 1993, John died, and respondent First National Bank of Evergreen Park was appointed the successor trustee of the trust (trustee).
On March 3, 1994, Winkelman instituted proceedings for her appointment as Alice's guardian. A report was filed by Dr. Joel Leff which stated that Alice was unable to care for herself because she had "longstanding psychiatric problems" and "suffer[ed] from schizoaffective disorder, manic." The report also stated that Alice had been diagnosed with diabetes mellitus and was unable to follow a diabetic diet. On March 31, the trial court appointed Winkelman as Alice's guardian.
On September 16,1994, Winkelman filed a motion for withdrawal and substitution of attorney, substituting Deborah Helms as her attorney in place of the Bank's attorney, which the trial court subsequently granted. On the same day, Winkelman also filed a petition to approve her fees as guardian of Alice and fees for the guardian's attorney.
In her petition, Winkelman stated that Alice lived with her in Winkelman's home, and required supervised care at a minimum of 10 hours per day. Alice's estate was valued at zero, and Alice had no annual income. Since undertaking guardianship services, Winkelman had been reimbursed by the trustee for certain out-of-pocket expenses such as mileage, clothing, shoes, eyeglasses, personal items, meals, and other miscellaneous expenses which were provided by the guardian to Alice. The petition also stated that since her appointment as guardian on March 31, 1994, Winkelman had expended 987.5 hours caring for Alice, which included time expended by Winkelman for grocery shopping, taking Alice to lunch, and taking Alice on vacation. Winkelman requested that she be compensated for this time at a rate of $20 per hour. Winkelman also requested reimbursement for attorney fees incurred by her in the total amount of $3,310 and attorney costs in the amount of $59. Winkelman attached excerpts from the trust instrument, as well as a time and expense log of her activities while caring for Alice beginning on February 23, 1994, and ending on August 3, 1994. Winkelman also attached a detailed report of her attorney's time and fees for work performed relating to Alice and Winkelman's guardianship of Alice. The daily entries in Winkelman's attorney's time sheet are dated beginning January 12, 1994, and ending on an unspecified date in 1994 (the last dated entry is September 12, 1994, and one other entry follows with the description "Court appearance on Petition").
On December 21, 1994, the trustee filed a motion to dismiss Winkelman's petition. The trustee argued that it had no authority to pay the requested fees and should not be forced to pay them because the trust contained a spendthrift provision which protected the trust from creditors' claims, and that Winkelman, as Alice's guardian, was a creditor. Winkelman filed a memorandum in opposition to the motion to dismiss, in which she stated that during John's final illness, Alice was living with John in squalid conditions; after she discovered this fact, she began to care for Alice, taking her to an eye doctor, administering her diabetes and psychotropic medicines, monitoring her diet, and providing general care; despite her care, Alice continued to behave erratically and required constant attention; subsequent to her appointment as guardian, Alice had undergone surgery for skin cancer; according to Dr. Leff, Alice should be placed in a secure, structured living environment with supervision; and she was preparing to resign her guardianship, and the Public Guardian of Cook County had agreed to become Alice's guardian when she resigned. Winkelman further stated that applications in behalf of Alice for social security benefits, "SSI" benefits, and public aid were pending, social security *287 benefits having initially been denied and subsequently appealed.
Winkelman's memorandum further stated that the trustee refused to pay the fees for Alice's placement in a residential care facility, and until Alice begins receiving government aid, she must remain in Winkelman's care. Throughout her tenure as Alice's guardian, the trustee made one payment to Winkelman for her guardianship services, and paid a monthly allowance for Alice's room and board, medical needs, and miscellaneous needs. Winkelman argued that she should be awarded guardian and attorney fees because the trustee intended that Alice be provided necessary support, and the trust was Alice's only source of income and support until such time as public aid became available. She further argued that the settlor's intent that Alice's support be supplemented by the trust could not be fulfilled because Alice was not receiving any primary support. Winkelman contended that the trustee did not have complete discretion in disbursing funds, and guardians were statutorily entitled to compensation from the ward's estate. Winkelman further argued that she was not a common creditor, but rather was a necessary caregiver entitled to compensation for her services, and because Alice (the ward) had no estate, Winkelman should be compensated from the trust.
On February 22, 1995, the trustee filed a memorandum in support of its motion to dismiss Winkelman's petition for guardian and attorney fees. In its memorandum, the trustee first argued that the trial court lacked jurisdiction and authority to compel payment to Winkelman because there was no estate from which to compensate the guardian as the trust was not a part of Alice's estate, and the trust instrument did not authorize such a disbursement. The trustee further argued that the trust's spendthrift provision prevented the trustee from making payments for guardian fees because the guardian was acting as a creditor. Lastly, the trustee argued that it could not pay Winkelman as Alice's guardian because the trust was a discretionary supplemental needs trust. The trustee contended that, under a supplemental needs trust, a state agency could not seek reimbursement from the trust and, as guardian, Winkelman should not be placed in a better position than a government agency seeking reimbursement for the same services.
On April 5, 1995, the trial court held a hearing on Winkelman's petition for fees and the trustee's motion to dismiss, and made the following finding:
"THE COURT: Okay. Thank you folks. I believe the motion to dismiss the petition should be allowed. This would certainly be different if this were inter-vivos trust, funds created from the wardthose are clearly subject to fees, no question about it. And even though this language were in there at the sole discretion of the trustee those would definitely be allowable. And I presume the trustee wouldn't have any problem with it, they would be approved. But in this discretionary trust it seems above and beyond. So that is my order."
The trial court then entered an order dismissing Winkelman's petition with prejudice.
Winkelman filed a notice of appeal with this court on May 2, 1995. On October 17, 1995, while this appeal was pending, the trial court entered an order authorizing Winkelman to place Alice in Bourbonnais Terrace, a residential care facility.
Winkelman first argues that under sections 271 and 11a17 of the Illinois Probate Act of 1975 (Probate Act) (755 ILCS 5/271, 5/11a17 (West 1992)), guardianship fees are compensable from Alice's estate and, because Alice does not have an estate, she should be compensated from Alice's trust fund. Winkelman further argues that although the trust instrument indicates that the trustee retains discretion over disbursements, the trustee does not have complete discretion when disbursing funds for Alice's support and, therefore, the trial court can compel payment of Winkelman's guardian fees.[*] Winkelman further argues that her services are compensable because Illinois *288 case law has established that services performed exclusively for the emotional benefit of the disabled adult are compensable from the ward's estate.
The trustee argues that the trial court lacks jurisdiction to compel payment because guardian fees are only compensable from a ward's estate and the trust is not a part of Alice's estate. The trustee further argues that the trust is a discretionary supplemental needs trust, not a discretionary primary support trust and, therefore, the court cannot compel the trustee to pay for services provided to Alice which constitute primary support. The trustee also argues that section 5105 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/5105 (West 1996)) provides that a parent is not required to support an adult disabled child during the parent's life, and "the settlor [in this case] was legally entitled to set up the John F. McInerny Trust to supplement the care of Alice Lee McInerny and owed no legal obligation to design the trust in a manner that would provide for the primary care of the beneficiary."
It is well settled that where no genuine issues of material facts remain in dispute and a trial court has issued rulings of law, a reviewing court must use a de novo standard of review. Jackson v. Moreno, 278 Ill. App.3d 503, 505, 215 Ill.Dec. 277, 663 N.E.2d 27 (1996). Further, "the interpretation of statutory provisions is traditionally a question of law to which a deferential standard of review is inapplicable." Mellon Bank N.A. v. Midwest Bank & Trust Co., 265 Ill.App.3d 859, 866, 202 Ill.Dec. 772, 638 N.E.2d 640 (1993). "A guardian of * * * [a] person has a duty to make necessary provision for his ward's `support, care, comfort, health, education, and maintenance, and such professional services as are appropriate.'" In re Estate of Burgeson, 125 Ill.2d 477, 486, 126 Ill.Dec. 954, 532 N.E.2d 825 (1988). The Probate Act provides that "[a] representative [or guardian] is entitled to reasonable compensation for his services." 755 ILCS 5/271 (West 1992). The Act also provides that personal guardians may be compensated from the estate of a ward, i.e.:
"Duties of personal guardian. * * * The guardian shall assist the ward in the development of maximum self-reliance and independence. The guardian of the person may petition the court for an order directing the guardian of the estate to pay an amount periodically for the provision of the services specified by the court order." 755 ILCS 5/11a17 (West 1992)
In addition, a guardian may be compensated from the estate of the ward for services which "further the emotional well-being of the ward," and sections 271 and 11a17 have been interpreted "to permit the probate court to consider services performed exclusively for the emotional benefit of the disabled adult in setting compensation for the adult's personal guardians." In re Estate of Donnelly, 111 Ill.App.3d 1035, 1038-39, 67 Ill.Dec. 757, 445 N.E.2d 49 (1983).
While the statutory provisions and case law cited above support Winkelman's argument that a guardian may be compensated for his or her services from a ward's estate, in the present case, as both parties agree, the trust is not a part of Alice's estate. Therefore, under sections 271 and 11a17, Winkelman is not entitled to compensation from the trust's funds for services she has provided because those funds are not a part of Alice's estate.
Winkelman argues, however, that although the trust's funds are not a part of Alice's estate, she should be compensated from those funds because while it was John's intent to create a discretionary supplemental needs trust, in actuality the trust has been functioning as a discretionary primary support trust and should be construed as such. Winkelman argues that because the trustee has been providing payments for Alice's primary support, and because Alice has not been able to secure any form of public aid, John's intent that the trust pay supplemental support cannot be fulfilled. Moreover, Winkelman argues, John intended that the trust should provide for Alice's comfort, and this requires the trustee to pay for guardian services. Winkelman further argues that under a discretionary primary support trust, her services constitute primary support and the trustee does not retain the discretion to withhold *289 payment to her under its discretionary power or under the trust's spendthrift provision because she is not a common creditor. The trustee argues that the trust contains a spendthrift provision which protects the principal and income from being subject to the claims of any creditor or legal process, and Winkelman's claims for her guardianship services and guardian attorney fees is that of a creditor. Therefore, the trustee argues, the plain language of the trust prevents the trustee from being subject to Winkelman's claims.
"In general, the rules for construction of written instruments * * * apply to the interpretation of truststhe question of paramount importance being the settlor's intention, which if unambiguous is gathered from the whole instrument creating the trust." Department of Mental Health and Developmental Disabilities v. First National Bank of Chicago, 104 Ill.App.3d 461, 463, 60 Ill.Dec. 187, 432 N.E.2d 1086 (1982). The court will effectuate the terms of the trust if it is not contrary to public policy. Harris Trust & Savings Bank v. Donovan, 145 Ill.2d 166, 172, 163 Ill.Dec. 854, 582 N.E.2d 120 (1991). When construing trusts, the court will apply the same rules of construction it applies when it construes wills. Harris Trust, 145 Ill.2d at 172, 163 Ill.Dec. 854, 582 N.E.2d 120. "The settlor's intent is to be determined solely by reference to the plain language of the trust itself, and extrinsic evidence may be admitted to aid interpretation only if the document is ambiguous and the settlor's intent cannot be ascertained." Stein v. Scott, 252 Ill.App.3d 611, 615, 192 Ill.Dec. 558, 625 N.E.2d 713 (1993).
A court will permit the reformation of a trust only in extreme cases, and this power is to be "exercised with great caution." Department of Mental Health & Developmental Disabilities v. Phillips, 114 Ill.2d 85, 91, 102 Ill.Dec. 407, 500 N.E.2d 29 (1986) (Phillips II). The court may consider "the surrounding circumstances at the time the instrument was executed, to the extent they may aid in determining the settlor's intention in using certain language." First National Bank v. Canton Council of Campfire Girls, Inc., 85 Ill.2d 507, 514, 55 Ill.Dec. 824, 426 N.E.2d 1198 (1981). "A court can allow reformation of a trust when an unforeseen exigency arises which may place the cestui que trust in `pinching want,' making it necessary for the court to place itself in the position of the settlor and carry out his intention as if he had anticipated the changed circumstances." Phillips II, 114 Ill.2d at 91, 102 Ill.Dec. 407, 500 N.E.2d 29.
In the present case, both parties agree that John intended to create a discretionary supplemental support trust with a spendthrift provision. As the trustee states in its brief, case law addressing the issue of whether third parties may obtain reimbursement from a discretionary supplemental support trust with a spendthrift provision is scarce. The cases cited by both Winkelman and the trustee involved the issue of whether State agencies may be reimbursed for services provided to beneficiaries of discretionary trusts with spendthrift provisions, and have been affected by a statute enacted by the Illinois legislature in 1991. See First National Bank, 104 Ill.App.3d 461, 60 Ill. Dec. 187, 432 N.E.2d 1086; Department of Mental Health v. Phillips, 133 Ill.App.3d 337, 88 Ill.Dec. 444, 478 N.E.2d 1052 (1985) (Phillips I); Phillips II, 114 Ill.2d 85,102 Ill.Dec. 407, 500 N.E.2d 29; and Button v. Elmhurst National Bank, 169 Ill.App.3d 28, 119 Ill. Dec. 509, 522 N.E.2d 1368 (1988). These cases stand for the proposition that discretionary trust income and principal should be considered as part of the beneficiary's estate for purposes of reimbursement when a State agency is seeking to be paid for its services provided to the beneficiary even when the trust contains a spendthrift provision. See First National Bank, 104 Ill.App.3d at 465, 60 Ill.Dec. 187, 432 N.E.2d 1086 (holding "that the interests of the beneficiaries in the spendthrift trusts here should be considered as estates within the meaning of that term in section 5105 of the Code [405 ILCS 5/5 105] and, in this regard, we also view the omission of a specific reference to trustees in that section as not implying a legislative intent to provide free treatment in State facilities for the beneficiaries of spendthrift or other trusts").
*290 In the present case, however, Winkelman is the guardian, not a State agency, seeking reimbursement for services provided to the beneficiary. Thus, the case law cited above does not apply. In addition, even if Winkelman's services were more similar to those of a State agency than to those of a creditor, she would be precluded from compelling payment from Alice's trust because in 1991 the Illinois legislature enacted a statute which protects discretionary trusts created for disabled beneficiaries from claims by State agencies, i.e.:

"A discretionary trust for the benefit of an individual who has a disability that substantially impairs the individual's ability to provide for his or her own care or custody and constitutes a substantial handicap shall not be liable to pay or reimburse the State or any public agency for financial aid or services to the individual except to the extent the trust was created by the individual or trust property has been distributed directly to or is otherwise under the control of the individual * * *. A discretionary trust is one in which the trustee has discretionary power to determine distributions to be made under the trust." (Emphasis added.) 760 ILCS 5/15.1 (West 1996).
Based on the facts of the present case, the exception in this statute does not apply and, therefore, Winkelman may not recover fees under the statute.
Winkelman further argues, however, that if her services are not similar to those of a State agency, but rather to those of a creditor, she is providing primary support for Alice and, under section 157(b) of the Restatement (Second) of Trusts, she should be allowed to assert a claim against the trust even though the trust contains a spendthrift provision protecting it from creditors' claims.
Section 157 of the Restatement (Second) of Trusts specifies claims which may be enforceable against a spendthrift trust and trusts for support, as follows:
"Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,
(a) by the wife or child of the beneficiary for support, or by the wife for alimony;
(b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;
(c) for services rendered and materials furnished which preserve or benefit the interest of the beneficiary;
(d) by the United States or a State to satisfy a claim against the beneficiary." (Emphasis added.) Restatement (Second) of Trusts, § 157(1959).
Here, we conclude that Winkelman, if acting as a creditor, is not supplying necessary services to Alice. The trustee has distributed funds from the trust for food, clothing, shelter and other miscellaneous items (primary support) at Winkelman's request for Alice's necessities. Winkelman, as Alice's guardian, is only required to represent Alice's interests; Winkelman is not required to provide the services she is now seeking to have the trust reimburse, such as grocery shopping, taking Alice to lunch, or taking Alice on vacation. Thus, Winkelman is not entitled to circumvent the trust's spendthrift provision by way of the exceptions enumerated in section 157(b) of the Restatement (Second) of Trusts.
We also briefly note that it is irrelevant whether the trustee has disbursed funds for Alice's primary support "in violation" of the settlor's intent, as Winkelman argues, because under either a discretionary supplemental support trust with a spendthrift provision or a discretionary primary support trust with a spendthrift provision, Winkelman is not entitled to compensation because her services clearly do not constitute primary support. Therefore, this court does not have to determine whether it must reform the trust, a power which is to be exercised "with great caution." Phillips II, 114 Ill.2d at 91, 102 Ill.Dec. 407, 500 N.E.2d 29.
Winkelman also contends that the trustee abused its discretion in refusing to pay for her guardianship services because they are necessary for Alice's basic support. Winkelman further argues that because the trustee has withdrawn monies from the trust for *291 trust administration fees, it has breached its fiduciary duty.
"Absent proof of fraud, abuse of discretion or bad faith, a trustee's exercise of discretion is not subject to interference by the court." Taxy v. Worden, 181 Ill.App.3d 97, 107, 129 Ill.Dec. 851, 536 N.E.2d 901 (1989). A court cannot substitute its judgment for that of the trustee's absent actions by the trustee which are outside the bounds of reasonable judgment. Taxy, 181 Ill. App.3d at 107, 129 Ill.Dec. 851, 536 N.E.2d 901. However, "such discretion is not an arbitrary one and one which would permit the trustee to provide no support whatever for [the beneficiary]." First National Bank, 104 Ill.App.3d at 465, 60 Ill.Dec. 187, 432 N.E.2d 1086.
Here, we hold that the trustee has not abused its discretion in performance of its duties enumerated under the trust instrument in refusing to pay Winkelman guardian and attorney fees. The trust specifies that the trustee shall disburse funds at its discretion for the comfort and support of Alice, supplemental to what Alice is entitled to receive from government aid. The trustee has made disbursements for Alice's room and board, clothing, medical needs and other miscellaneous needs because Alice has been unable to secure any other form of income. Simply because the trustee did not authorize a disbursement for Winkelman's guardian and attorney fees does not mean that the trustee has abused its discretion. If the trustee had not paid for food when Alice was in desperate need for food, for example, the trustee could be considered to have abused its discretion. This is not the case, however. In any event, based on our determination that Winkelman's claims for guardian and attorney fees were unenforceable against the trust, there could be no abuse of discretion in the trustee's refusal to pay them.
We also reject Winkelman's argument that the trustee has abused its fiduciary duty by charging the trust for trust administration fees. Winkelman, failed to produce evidence in the trial court of the trustee's fees and, therefore, no record exists of what, if any, charges the trustee has made to the trust res. Moreover, assuming arguendo that the trustee breached its fiduciary duty to the beneficiary by charging excessive fees to the trust res, Winkelman's remedy would be an action against the trust in behalf of Alice, rather than in her own behalf for payment of guardian and attorney fees.
Lastly, it should be noted that Winkelman is requesting fees for her services beginning on February 23, 1994, over one month before she was appointed Alice's guardian on March 31, 1994. Additionally, Winkelman states in her opening and reply briefs that family members and the trustee "prevailed" upon her to become guardian and, therefore, equity and public policy dictate that she be compensated for her services. There is no indication in the record, however, that Winkelman's assumption of guardianship duties was anything other than voluntary. Moreover, any implication in Winkelman's brief that the trustee misled her regarding compensation for her guardianship services is also unsupported by the record.
For the reasons stated, we affirm the order of the circuit court dismissing Winkelman's petition for fees.
Affirmed.
McNAMARA and CERDA, JJ., concur.
NOTES
[*] In the trial court and again on appeal, Winkelman simultaneously argues for guardian fees and attorney fees.