BROWN BROTHERS HARRIMAN TRUST COMPANY, LLC, *et al.*, Petitioners-Appellees, v. CHARLES F. BENNETT *et al.*, Ex'rs of the Estate of Varina Margaret Webb Stewart, Deceased, Respondents-Appellants.

First District (6th Division)    No. 1—04—2350

Opinion filed April 22, 2005.

Edmund R. McGlynn, Jr., of Bollman, Lesser & McGlynn, L.L.P., of Lake Forest, for appellants.

Robert L. Wiesenthal, Robert M. Moye, and Curt A. Paison, all of Bell, Boyd & Lloyd, L.L.C., of Chicago, for appellees.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

This declaratory action involves approval of a trust account sought by the petitioner trustees, Brown Brothers Harriman Trust Company, LLC (hereinafter, Brown Brothers Harriman), Peter Babcock and Sheffield Phelps, and the objection raised by respondents, Charles Bennett and Gerald Bennett, that investment advisory and trustee fees had been improperly charged against the trust income rather than the trust principal in violation of the Principal and Income Act (hereinafter, the Act) (760 ILCS 15/1 *et seq.* (West 2002)). Respondents, who are the executors of the estate of and the successors in interest to the

income beneficiary of the trust, claimed that the charges harmed them by reducing the amount of income received by the estate. On cross-motions for summary judgment, the circuit court granted petitioners' motion and entered judgment in their favor, approving the accounting, and denied respondents' motion. Respondents appeal from the denial of their motions for summary judgment and for reconsideration of the same. On appeal, respondents contend that section 14 of the Act (760 ILCS 15/14 (West 2002)) requires that the charges be divided between trust principal and income regardless of explicit language in the trust granting the trustees discretion to determine the allocation of charges to the trust income. We affirm.

## BACKGROUND

John W. Stewart, who was the grantor of the trust agreement at issue, died on June 26, 1976. Stewart's first wife, with whom he had four children, predeceased him. The children from that marriage are Philip B. Stewart, Patricia Stewart Phelps, Robert Forsythe Stewart, and Cynthia Stewart Kaiser. Stewart's second wife, Varina Margaret Webb Stewart, known as "Marka," survived him for more than 20 years. Marka was the income beneficiary of the trust until her death on May 23, 2000. Respondents are Marka's two sons from a previous marriage.

On April 30, 1966, Stewart created a trust agreement between himself as grantor and trustee and trustees Sheffield Phelps and M. Dutton Morehouse. The agreement was amended three times: in August 1968, in December 1972, and in January 1976. The December 1972 agreement, which amended and restated the 1966 trust agreement, is the document relevant to this appeal (hereinafter, the trust or the agreement).

Until his death in 1976, Stewart was one of the trustees of his trust. Stewart's son-in-law Sheffield Phelps and Morehouse also served as trustees during Stewart's lifetime. In 1983, Brian Berris was appointed as a trustee; he resigned as trustee in 2000 and was succeeded by petitioner Brown Brothers Harriman. Morehouse was succeeded as a trustee in 1991 by Rodney Waldbaum, who in turn resigned in 2000 and was succeeded by petitioner Peter Babcock.

In Article III.2(a), the trust provides that after Stewart's death, all the net income of the trust is to be paid to Marka. It further provides, in Article V.1(g), that the trustees shall have the power to exercise their discretion "to determine *** the allocation of apportionment between income and principal of all receipts and disbursements."

At Stewart's death, the trust assets totaled more than $10 million, but they were decreased by more than one-half in value by the pay-

ment of loans and other obligations. Marka received an average of more than $625,000 per year from the trust, for a total net income of more than $15 million from the trust by the time of her death in 2000. At that time, the trust principal had grown to more than $49 million.

It is undisputed that all the trustees' fees and investment advisory fees (collectively, the fees) paid from Stewart's death in June 1976 to the date of Marka's death in May 2000 were paid from and allocated to the trust income rather than the trust principal.

According to Sheffield Phelps, the practice of allocating the fees to income began during Stewart's lifetime and the trustees continued that practice after Stewart's death. According to Phelps, Stewart was primarily responsible for the trust management from its creation in 1966 until his death; during that time, the trustee and investment advisory fees were charged to the trust income with Stewart's knowledge and approval. Stewart directed the trustees to consider the growth of principal as well as the preservation of the principal and the production of income. The trustees considered the trust administration policies they followed, including the allocation of the fees, to be in keeping with Stewart's intentions.

In February 2000, following the retirement of one of the trustees, a release and approval of the accounting of the 1966 trust was granted on Marka's behalf by Marka's attorney and agent, Ruth Rouss. Rouss signed the release under power of attorney for Marka.

Petitioners subsequently provided respondents with an accounting of the trust from June 16, 1976, through May 23, 2000, *i.e.*, for the entire period from Stewart's death through the date of Marka's death.

In June 2002, petitioners filed a complaint for declaratory judgment, seeking approval of their accounting under section 2—701 of the Code of Civil Procedure (735 ILCS 5/2—701 (West 2002)) for the period of June 26, 1976, through May 23, 2000. Respondents objected to the fact that the trustees' and investment advisors' fees were paid against trust income. They claimed that such allocation reduced the amount paid to the income beneficiary and that the fees should have been allocated equally between the trust principal and income.

*Both parties ultimately filed motions for summary judgment.* Petitioners supported their motion with an affidavit from Sheffield Phelps.

Following a hearing on the cross-motions on March 16, 2004, the circuit court issued a written memorandum opinion and order denying respondents' motion for summary judgment and granting petitioners' motion for summary judgment and approving the accounting.

In its written order, the court considered the pertinent statutory provisions of the Act and found that, according to the plain language

of the Act in both its earlier and current versions,[1] "the rule that trustees' fees must be equally apportioned between income and principal can be changed in the trust document." The court found section 3(a) of the Act to be controlling.

The court then considered whether the trustees acted reasonably and in good faith in making their allocation of the trustees' and investment advisors' fees and found that they did. In so finding, the court stated that the evidence established that Marka was paid the net income of the trust after allocation of the fees as mandated by the trust and that her comfortable support was provided for. Finally, in approving the accounting, the court found that at least some trust information was provided to Marka orally, and quarterly reports were sent to Marka's accountant or to Marka's daughter. The court found that respondents failed to allege that Marka Stewart was in any way damaged by the trustees' failure to provide a regular accounting. The court approved the accounting of the trustees for the period of June 16, 1976, through May 23, 2000.

Respondents subsequently filed a motion to reconsider the judgment and accounting, which the court denied on July 2, 2004. Respondents now appeal the orders granting petitioner's motion for judgment and an accounting and denying their motions for summary judgment and reconsideration.

## DISCUSSION

On appeal, respondents first urge this court to adopt a construction of section 14 of the Act that would require the fees at issue to be allocated equally to the trust income and the trust principal.

Summary judgment is appropriate where the pleadings, depositions, affidavits, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333, 662 N.E.2d 397 (1996). The standard of review on an appeal from a grant of summary judgment is *de novo*. *Busch*, 169 Ill. 2d at 333. Moreover, " 'the interpretation of statutory provisions is traditionally a question of law [citation] to which a deferential standard of review is inapplicable.' " *In re Estate of McInerny*, 289 Ill. App. 3d 589, 596, 682 N.E.2d 284 (1997),

---

[1] The circuit court cited the earlier versions of the statutory sections relied upon by both parties (Ill. Rev. Stat. 1977, ch. 30, par. 172; Ill. Rev. Stat. 1967, ch. 30, par. 160; and Ill. Rev. Stat. 1977, ch. 30, par. 160) and found the relevant provisions in the current and earlier versions of the statute to be essentially the same.

quoting *Mellon Bank, N.A. v. Midwest Bank & Trust Co.*, 265 Ill. App. 3d 859, 866, 638 N.E.2d 640 (1993). Accordingly, as respondents appeal from a grant of summary judgment and they raise an issue of statutory interpretation, our review is *de novo.*

## I

Respondents contend that a provision in the trust agreement granting the trustees the discretion to allocate the fees against the trust income rather than the trust principal is contrary to the requirements of section 14 of the Act. Respondents assert that Illinois courts have provided little guidance on the application of section 14 and, for that reason, they look for such guidance to courts in other jurisdictions which have addressed the allocation of fees to trust income and trust principal. Respondents rely upon *American Security & Trust Co. v. Frost*, 117 F.2d 283 (D.C. Cir. 1940), for their position that this court should adopt a construction of section 14 that would require the fees to be allocated equally to income and principal regardless of the grantor's expressed intent.

Petitioners counter that reliance on *Frost*, or authority from any other jurisdiction, is misplaced because Illinois law is clear. Rather, petitioners assert, respondents incorrectly focus entirely on section 14. However, they contend that section 3, which provides that the grantor's intent be followed, controls the disposition here instead of section 14.

Section 14 of the Act addresses charges against income and principal. 760 ILCS 15/14 (West 2002). The section provides that "one-half of the regular compensation of the trustee, attorney, investment counsel, custodian or accountant, subject to paragraph (1) of subsection (c)" shall be made against income. 760 ILCS 15/14(a)(6) (West 2002). Paragraph (1) of subsection (c) provides that the following charges shall be made against principal:

> "one-half of the regular compensation of the trustee, attorney, investment counsel, custodian or accountant shall be paid out of principal, provided that, if in the judgment of the trustee, the charging of a part or all of that portion of such compensation to principal is impracticable because of the lack of sufficient principal cash and readily marketable intangible personal property, or inadvisable because of the nature of the assets, that part or all of such compensation shall be paid out of income." 760 ILCS 15/14(c)(1) (West 2002).

See also Ill. Rev. Stat. 1977, ch. 30, par. 172.

However, section 3(a) provides that the Act governs

> "the ascertainment of income and principal and the apportionment of receipts and expenses in all cases where a trust is

established unless otherwise stated hereinafter, to the extent not inconsistent with the provisions of the instrument." 760 ILCS 15/3(a) (West 2002).

See also Ill. Rev. Stat. 1967, ch. 30, par. 160; Ill. Rev. Stat. 1977, ch. 30, par. 160.

We agree with petitioners that section 3 of the Act, which addresses the scope of the Act and the rules of administration, controls the disposition here. Section 3(a) of the Act clearly provides that the apportionment of charges to trust income and principal, which might otherwise be subject to the allocation scheme in section 14, may be changed in the trust document. First, section 3(a) makes conditional the authority of the Act concerning the allocation of certain expenses to income or principal by stating: "This Act governs the ascertainment of income and principal and the apportionment of receipts and expenses in all cases where a trust is established *unless* otherwise stated hereinafter, *to the extent not inconsistent with the provisions of the instrument.*" (Emphasis added.) 760 ILCS 15/3(a) (West 2002). Therefore, under section 3(a), the Act governs such allocation only to the extent that the Act is "not inconsistent with" the provisions of the trust instrument.

The primacy accorded the provisions of the trust instrument itself is further emphasized in section 3. Section 3(a) next explicitly provides that the creator of the trust may determine the apportionment of expenses to income or principal:

"A person establishing a trust may make provision in the instrument for the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee to do so and such provision, where not otherwise contrary to law, shall control notwithstanding this Act." 760 ILCS 15/3(a) (West 2002).

Thus, section 3(a) provides the authority for trustees to exercise discretion concerning the allocation of expenses to income or principal where such discretion has been granted by the person establishing the trust. Section 3 reiterates the primacy of the provisions of the trust instrument over the provisions of the Act by stating that the discretion granted to the trustees shall control. Moreover, this authority provided in section 3(a) for the trustees' discretion to control questions of allocation is not limited to one specific section of the Act. Rather, it extends to the entire Act: "A person establishing a trust may make provision in the instrument for the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee to do so and such provision *** shall control notwithstanding this Act." 760 ILCS 15/3(a) (West 2002).

The next subsection of 3 further declares the primacy of the trust instrument. Subsection (b) of section 3 provides that the administration of the trust, with respect to the allocation of expenses to principal or to income, is to be conducted as the terms of the trust instrument dictate. Here again, the language of the Act clearly provides that the terms of the trust instrument control contrary statutory provisions, stating:

"A trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen. A trust is so administered with respect to the allocation of receipts and expenses if a receipt is credited or an expense is charged to income or principal or partly to each:

(1) *in accordance with the terms of the instrument, notwithstanding contrary provisions of this Act*[.]" (Emphasis added.) 760 ILCS 15/3(b)(1) (West 2002).

The remaining paragraphs of subsection 3(b) address additional circumstances under which the Act would not control. The subsection next provides that the trust be so administered as to allocation of charges to income or principal:

"in the absence of any contrary terms of the instrument *** or, *if the trustee in the trustee's discretion determines* that application of the provisions of this Act would result in a substantial inequity to either the income beneficiaries or the remaindermen, in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as those entitled to principal." (Emphasis added.) 760 ILCS 15/3(b)(2) (West 2002).

Finally, subsection 3(b) provides that, if neither of the rules of administration is applicable, *i.e.*, if the allocation of expenses to principal or income is neither in accordance with terms of the instrument nor to be done in the absence of any contrary terms of the instrument, the trust shall be administered "in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as those entitled to principal." 760 ILCS 15/3(b)(3) (West 2002).

Next, subsection 3(c) provides:

"If the instrument *** gives the trustee discretion in crediting a receipt or charging an expense to income or principal or partly to each, no inference of imprudence or partiality arises from the fact that the trustee makes an allocation other than in accordance with a provision of this Act or determines not to do so." 760 ILCS 15/3(c) (West 2002).

Thus, this subsection of section 3 again emphasizes the primacy of the trust instrument, or more specifically, a grant of discretion to the trustees provided within the instrument, over the Act. The final

subsection, which addresses the timing of the allocation of expenses and receipts, also provides that the trustee may exercise discretion in such determination:

> "To the extent not otherwise provided in the instrument or this Act, receipts shall be credited *** and expenses shall be charged *** except that the *trustee may elect* to credit receipts and charge expenses in any other reasonable manner that complies with the provisions of subsection (b) and *is not inconsistent with the terms of the instrument*." (Emphasis added.) 760 ILCS 15/3(d) (West 2002).

Therefore, as section 3 in its entirety makes clear, the provisions of the Act concerning the allocation of expenses to income or principal are not paramount. Rather, throughout section 3 repeated provision is made for the terms of the trust instrument itself or the discretion of the trustees, when granted in the instrument, to control such allocation. Thus, the section of the Act which defines its scope does so by providing that the trust instrument itself controls in the event of a conflict with provisions of the Act.

Here, the trust agreement specifically grants discretion to the trustees, and their exercise of such discretion would control the allocation of charges to income or principal without resort to the provisions of section 14 of the Act. The primacy accorded in section 3 of the Act to the trust instrument, and, by extension, the intent of the grantor as expressed in the instrument, is consistent with the well-established principles of trust construction.

In construing a trust, the court's primary concern is to determine the grantor's intent and to give effect to that intent if it is not contrary to public policy. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172, 582 N.E.2d 120 (1991); *Brown v. Ryan*, 338 Ill. App. 3d 864, 871, 788 N.E.2d 1183 (2003). The court applies the same rules of construction in construing a trust as it does in construing a will. *Donovan*, 145 Ill. 2d at 172; *First National Bank of Chicago v. Canton Council of Campfire Girls, Inc.*, 85 Ill. 2d 507, 513, 426 N.E.2d 1198 (1981). The entire document is to be considered in ascertaining the testator's intent. *Donovan*, 145 Ill. 2d at 172; *First National Bank of Chicago*, 85 Ill. 2d at 513-14. In determining that intent, the words used are given their plain and ordinary meaning. *Donovan*, 145 Ill. 2d at 172; see also *Eychaner v. Gross*, 202 Ill. 2d 228, 256, 779 N.E.2d 1115 (2002). Where the language used in the trust is unambiguous and clear, the intent must be ascertained from that language. *Brown*, 338 Ill. App. 3d at 871; *In re McInerny*, 289 Ill. App. 3d at 597-98.

The language used in the trust here is clear and unambiguous. The trust contains the following grant of discretion to the trustees:

> "1. The trustees shall have the following powers, and any others

that may be granted by law, with respect to each trust hereunder, to be exercised as the trustees in their discretion determine to be to the best interests of the beneficiaries:

\* \* \*

(g) To determine the manner of ascertainment of income and principal, and the allocation or apportionment between income and principal of all receipts and disbursements; and to select an annual accounting period[.]"

This provision in the trust clearly and unambiguously gives the trustees the discretion to allocate certain charges to income or principal.

Respondents ignore this clear grant of discretion given the trustees to determine the allocation of the fees to income. Rather, they argue that Stewart did not term the discretion "absolute" or "uncontrolled" and that he did not explicitly direct the trustees how to allocate their fees. We find no merit in this argument; presumably, if explicit direction were given as to a particular allocation, the grant of discretion would be meaningless.

Respondents further argue that an interpretation of the trust acknowledging the grant of discretion is contrary to the Act. However, they rely upon only a partial and selective reading of sections 3(b)(2) and 14(c)(1) of the Act. Respondents claim that section 3(b)(2) (directing that its application not be conducted in a manner resulting in inequity to the income beneficiaries) and the language of Article III of the trust, which allows the trustees, under certain circumstances, to pay Marka principal of the trust estate, demonstrate that Stewart "favored the income beneficiary," *i.e.*, Marka, and require the trustees to exercise their discretion in a manner favorable to her. Such exercise, they claim, is governed by section 14(c), which requires the trustees to allocate one-half of the fees to principal.

However, respondents' argument is flawed in several ways. First, respondents rely on a part of section 3 that addresses the trustees' determination made in exercise of their discretion that application of the statute "would result in a substantial inequity." 760 ILCS 15/ 3(b)(2) (West 2002)). In so doing, respondents appear to implicitly concede that the trustees properly may exercise their discretion concerning the allocation of charges. Such concession, however, would not compel the application of section 14(c) in the manner that respondents claim.

Next, respondents rely on a part of Article III.2(b) of the trust that contains permissive language providing:

"After the death of the Grantor, whenever the trustees determine that the income of the Grantor's said wife from all sources known

> to the trustees is not sufficient for her comfortable support, *the trustees may pay to her*, or use for her benefit, so much of the principal of the trust estate as the trustees determine to be required for that purpose." (Emphasis added.)

The permission to pay Marka from the principal of the trust depends, however, on the trustees' determination "that the income of the Grantor's said wife[, *i.e.*, Marka,] from all sources known to the trustees is not sufficient for her comfortable support." No such determination was ever made. Finally, in asserting that the trustees were required to exercise their discretion in a manner favorable to Marka, respondents then illogically claim that apparently such discretion would be governed by section 14(c) of the Act.

Respondents ignore entirely, however, the provisions in section 3(a), discussed earlier, that the grantor may grant discretion to the trustees to allocate charges to income or principal and that such grant of discretion controls:

> "A person establishing a trust may make provision in the instrument for the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee to do so and such provision, where not otherwise contrary to law, shall control notwithstanding this Act." 760 ILCS 15/3(a) (West 2002).

Respondents' further claim that the trust principal always had sufficient cash to pay one-half of the fees ignores the fact that, under the terms of the trust instrument, the trustees were not required to pay one-half or any portion of the fees from the trust principal. Moreover, even if section 14 of the Act were applicable here—which it is not—provision is made in that section also for the exercise of discretion in the allocation of charges to income or principal. Section 14(c) provides an exception to the requirement that one-half of the trustees' and investment advisors' fees be charged against the trust principal; such exception is based on the determination of the trustee that such allocation would be impracticable or inadvisable:

> "One-half of the [fees] *** shall be paid out of principal, provided that, *if in the judgment of the trustee*, the charging of a part or all of that portion of [the fees] *** to principal *is impracticable* because of the lack of sufficient principal cash and readily marketable intangible personal property, *or inadvisable* because of the nature of the assets, that part or all of such compensation shall be paid out of income." (Emphasis added.) 760 ILCS 15/14(c)(1) (West 2002).

Thus, even under section 14 of the Act, the trustees would still be accorded the discretion to determine whether an allocation of charges to the trust principal was inadvisable. While it is not disputed that there

would have been sufficient cash in the trust principal to pay the fees, again, the allocation of one-half of the fees to principal was not required because, as discussed earlier, section 14(c)(1) does not control. Rather, where the trust instrument contains the explicit grant of discretion to the trustees to determine the allocation of the fees to either income or principal, as the trust does here, the instrument controls. See 760 ILCS 15/3(a) (West 2002).

Finally, respondents' reliance upon *Frost*, 117 F.2d 283, is entirely misplaced. *Frost* has no impact on our decision as it does not concern the application of Illinois law and is not binding upon this court. Further, the situation in *Frost*, where the will directed distribution but was silent as to what constituted the corpus or income, is inapposite. Here, on the other hand, the trustees were given a clear grant of discretion in the trust to determine the allocation of the fees to income or principal.

For all the above-stated reasons, the circuit court properly found that section 3(a) of the Act applies to the apportionment of expenses at issue and, thus, that Stewart's grant of discretion, made in Article III.1(g) of the trust, to the trustees to allocate the fees to income is controlling.

## II

Respondents also contend that the trustees abused their discretion in allocating the fees to income. They assert that, over the 24 years at issue (1976-2000), the trustees disregarded the best interests of the income beneficiary, Marka, and their allocation of the fees to trust income was not justified either by reliance upon Stewart's own actions as trustee or upon the claimed income tax benefits of such allocation to Marka.

Respondents' abuse of discretion argument is made primarily in generalities. While respondents are correct in stating the general principles that a trustee owes a fiduciary duty of loyalty and fair dealing and good faith (see, *e.g.*, *Mucci v. Stobbs*, 281 Ill. App. 3d 22, 31, 666 N.E.2d 50 (1996)), they fail to cite anything in the record which would establish that the trustees failed to act in good faith. Respondents do specifically claim that the trustees failed to produce written evidence that they ever disclosed to Marka the allocation of all fees to income or that they ever issued a single current account.

However, in making this claim, respondents ignore substantial and undisputed evidence in the record that Marka was frequently and adequately informed of the accounting. First and foremost, respondents ignore the fact that Marka's agent, under power of attorney for her, executed a release and approval of accounts through the end of

January 2000. In the release, Rouss stated that "the current income beneficiary of the Trust has examined the statements and accountings of the trustees for all relevant periods up and through January 31, 2000, and has full information and knowledge of all of the assets, income, expenditures and distributions made during the term of the trust and finds all of them to be true and correct and in accordance with the terms of the Agreement and approves such statements and accountings." Respondents object in their reply brief to consideration of the release, which they claim is invalid; because they did not previously raise this point, however, it is deemed to be waived. See 188 Ill. 2d R. 341(e)(7).

Further, according to Phelps' undisputed affidavit and deposition testimony, Marka was made fully aware of all information concerning the income investment distributions of the trust by quarterly reports. Phelps testified that, eventually, Marka did not wish to receive the reports, which the trustees then sent to Marka's accountant and, subsequently, to Rouss, Marka's agent.

Moreover, respondents' argument that Stewart's own actions as trustee provide no justification for the trustees' actions is, in large part, illogical. They claim that Stewart, as grantor, was not a fiduciary and he had complete discretion as to all aspects of the trust, but they assert that Stewart's reasons for his actions as trustee should not be viewed by the trustees indicative of his intent. To that end, respondents claim that the Act does not allow trustees to delegate their duty to the grantor, "especially when he is dead." Rather, respondents assert, the trustees are required to make independent judgments based upon legally cognizable grounds instead of the grantor's actions or intent. Yet, it is just that exercise of discretion—the allocation of charges to income—that respondents argue against.

The exercise of discretion by the trustees is not subject to interference by the court absent proof of fraud, abuse of discretion or bad faith. *In re McInerny*, 289 Ill. App. 3d at 600. Absent actions by the trustee that are "outside the bounds of reasonable judgment," a court cannot substitute its judgment for the trustee's judgment. *In re McInerny*, 289 Ill. App. 3d at 600. Again, as we have already stated, respondents have not supported their claims of bad faith or abuse of discretion with any basis in the record; rather, they rely upon their own conclusory assertions.

Finally, respondents' claim that the income tax benefits to Marka did not justify the trustees' allocation of fees to income also rests solely on respondents' own assertions and interpretations of certain sections of the Internal Revenue Code. However, under section 3(c) of the Act, where the trustees are given such discretion over the alloca-

tion of charges, no inference of imprudence or partiality arises from their exercise of discretion. 760 ILCS 15/3(c) (West 2002). Therefore, we find this claim lacking in merit. Again, given the uncontroverted evidence in the record that the trustees fulfilled their duties and informed Marka, directly or indirectly, of the accounting, we reject respondents' claims that the trustees abused their discretion in determining the allocation of fees.

## CONCLUSION

Therefore, for all the reasons stated above, we find the grant of discretion to the trustees, which was made in the trust and which allows the trustees to determine the allocation of charges to income, controls the disposition under section 3(a) of the Act. We further find the record does not support the assertions that the trustees abused their discretion. Accordingly, we affirm the judgment of the circuit court, granting petitioners' motion for summary judgment and accounting and denying respondents' motions for summary judgment and reconsideration.

Affirmed.

McNULTY and TULLY, JJ., concur.