# Illinois Official Reports

## Appellate Court

***

### *Centrue Bank v. Voga*, 2020 IL App (2d) 190108

***

| | |
|---|---|
| Appellate Court Caption | CENTRUE BANK and LISA MADIGAN, in Her Official Capacity as Attorney General of the State of Illinois, Plaintiffs, v. LYLE L. VOGA, LARRY L. VOGA, LINDA JOAN FRISBEE, LOIS ENGLERT, SHIRLEY BUSCH, and ROBERT DUFAU, Defendants (Lyle L. Voga, Defendant and Counterplaintiff-Appellant; Larry L. Voga, Defendant and Counterdefendant; Linda Joan Frisbee and Lois Englert, Defendants and Counterdefendants-Appellees). |
| District & No. | Second District<br>Nos. 2-19-0108, 2-19-0550 cons. |
| Filed | September 24, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Kendall County, No. 08-CH-0871; the Hon. Robert P. Pilmer, Judge, presiding. |
| Judgment | No. 2-19-0108, Reversed and remanded.<br>No. 2-19-0550, Vacated. |
| Counsel on Appeal | David R. Haskins, of Law Office of David R. Haskins, LLC, of Aurora, for appellant.<br><br>Julie L. Cibulskis, of Speers, Reuland & Cibulskis, P.C., of Aurora, for appellee Lois Englert. |

Richard J. Tarulis and Elizabeth R. Bacon, of Brooks, Tarulis & Tibble, LLC, of Naperville, for other appellee.

Panel                    JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Zenoff and Brennan concurred in the judgment and opinion.


**OPINION**

¶ 1      Defendant and counterplaintiff Lyle L. Voga appeals several rulings of the circuit court of Kendall County concerning a trust amendment executed by defendant and counterdefendant Linda Joan Frisbee for the benefit of defendant and counterdefendant Lois Englert. Lyle argues that, because Linda was not authorized to amend the trust, the trial court erred in denying his motion for partial summary judgment on count V of his amended countercomplaint. We reverse the trial court's dismissal of that count as well as its subsequent judgments stemming therefrom, and we remand for further proceedings consistent with this opinion.

¶ 2                              I. BACKGROUND

¶ 3      This case comes before us for the second time. The events leading up to *Centrue Bank v. Voga*, 2017 IL App (2d) 160690 (*Voga I*) originated from a revocable living trust (Trust) executed by Lyle's late father, Leroy Voga, in January 2003 for the benefit of his children: Lyle, Linda, Lois, and defendant and counterdefendant Larry Voga. The Trust designated Leroy as trustee while naming Linda as primary successor trustee.

¶ 4      Pursuant to the Trust, Lyle, Linda, and Larry would all receive parcels of real property upon Leroy's death. The Trust also mandated that Shirley Busch, Leroy's companion, would receive a life estate in Leroy's Arizona residence. While the Trust did not gift Lois any real estate, it did provide that all four of Leroy's children would each receive a 25% share of the residue of his estate.

¶ 5      Leroy executed a durable power of attorney (Power of Attorney) in January 2003, which designated Linda as his agent. Section 9 of the Power of Attorney contained the following language:

         "b. Amend, Revoke or Exercise Powers Over Existing Trusts

             Other than a power that would constitute a general power of appointment under Section 2041 of the Internal Revenue Code of 1986, as amended, I give my agent the power to amend, revoke and/or exercise any and all other powers I could exercise under the terms of any trust of which I am a Trustor."

However, the Power of Attorney failed to specifically name any trust that Linda was entitled to amend.

¶ 6      On September 25, 2006, Linda executed an amendment to the Trust (Amendment). The Amendment created a new bequest for Lois upon Leroy's death, whereby she would receive "an amount of cash *** equal to the average fair market value by certified appraisal of the farm real estate gifted to [Linda] *** and the farm real estate gifted to [Larry]." The Amendment

retained its previous real property bequests as well as the siblings' residuary interests in Leroy's estate.

¶ 7 In February 2007, the siblings executed an agreement designed to make themselves cotrustees of the Trust. As a result of this agreement, plaintiff Centrue Bank (Centrue) filed an interpleader action (see 735 ILCS 5/2-409 (West 2006)) against the siblings, Shirley, and a third party who is no longer involved in these proceedings. In its complaint, Centrue alleged that Lyle and Larry—acting under their perceived capacity as cotrustees—demanded that Centrue turn over certain Trust property that it held. Because Centrue doubted the validity of the cotrustee agreement, it consequently sought direction from the court concerning the disposition of the property.

¶ 8 In August 2010, Lyle filed a 13-count countercomplaint against Larry, Lois, and Linda. Larry and Lois answered the countercomplaint and filed affirmative defenses before Lyle filed an additional count against Linda.

¶ 9 In June 2011, Lyle filed a motion under section 2-615(e) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615(e) (West 2010)) for judgment on the pleadings on count X of his countercomplaint.[1] Count X argued that the Amendment was void because the Power of Attorney, which purportedly authorized the Amendment, did not specifically name the Trust, as required by section 2-9 of the Illinois Power of Attorney Act (Act) (755 ILCS 45/2-9 (West 2006)). Neither Larry, Linda, nor Lois filed an objection to the motion.

¶ 10 The trial court heard Lyle's motion on July 14, 2011. After Lyle presented his arguments, Lois's counsel opined:

"I think [counsel for Lyle] is correct technically but I would just like the court to know that in recognition of [the Amendment] and the special gift that was given to Lois, two of the other beneficiaries of [the Trust] have assigned their interests in the residue to Lois. I don't think it affects the invalidity of [the Power of Attorney] at all, but I just wanted the court to be aware that certain of the beneficiaries in this case would submit to the court that it was truly the intent of [Leroy] to benefit Lois in the way that she was to be benefitted under [the Amendment], that was truly his intent, but there is no question about it technically under the law [that] [the Power of Attorney] did not properly identify [the Trust] and [Linda] was probably without the power to amend [the Trust]."

Larry's counsel agreed with this assessment before the trial court granted Lyle's motion and entered judgment for him on count X of his countercomplaint.

¶ 11 In January 2012, Linda filed a motion to vacate the July 2011 order. In her motion, Linda made the following allegations:

"2. The [Power of Attorney and the Amendment] were prepared by [Leroy's] attorney. ***
***

---

[1]Lyle also sought judgment on count IX of his complaint, but as discussed in *Voga I*, we can only assume that this count was eventually dismissed after being repleaded as count IV of Lyle's amended countercomplaint. *Voga I*, 2017 IL App (2d) 160690, ¶ 40. The parties have not mentioned count IX's disposition, and the record is otherwise silent as to how it was resolved.

4. The effect of [the Amendment] would be to deplete the entire Estate, so that there would be no residue to distribute.

5. [Linda and Larry] assigned their share of the Trust residue to [Lois], in respect of [the Amendment], which they believed reflected [Leroy's] wishes.

6. Prior to the Court hearing on July 14, 2011, all parties except [Lyle] determined that it was not cost efficient to litigate the validity of [the Power of Attorney and the Amendment].

7. The Court did not conduct any hearing on July 14, and the parties did not submit any evidence or present any argument.

8. The Court Order dated July 14 made findings which are not supported by the record.

9. The Court Order was not reviewed by [Linda] or her counsel prior to July 14, and was never served upon them. A copy of the Court Order was obtained from the Court Clerk in November, 2011.

10. In October, 2011, [Lyle] filed a Complaint in federal court, in the Northern District of Illinois, alleging a breach of fiduciary duty by [Linda] as Trustee for [the Trust], based in part on [the Power of Attorney and the Amendment].

11. Since this Court did not make any determination on the merits of [count X] of Lyle's [countercomplaint], this Court's Order should not be precedential in the federal court litigation."

¶ 12    When responding to her motion, Lyle argued that Linda had not pleaded any facts showing that she was entitled to relief from the judgment under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)). However, neither Lois nor Larry objected to Linda's motion.

¶ 13    The trial court ultimately granted Linda's motion and vacated the July 2011 order. In doing so, the court found:

"Well, no judge likes to vacate an order after 30 days simply because we like to say what's done is done and move on, but in this case[,] I don't see the harm done in vacating it. The indication is they're not likely to pursue it here. It's already being litigated in federal court which that's certainly the parties' options to do that."

¶ 14    In June 2012, Larry and Lois filed a joint motion under section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2012)), seeking to dismiss count X of Lyle's countercomplaint, pursuant to the doctrine of election. Furthermore, Larry and Lois sought a declaratory judgment in order to establish that Lyle forfeited any interest in the Trust by operation of the Trust's no-contest clause. After holding a hearing and entertaining arguments on the motion, the trial court took the matter under advisement and dismissed count X of Lyle's countercomplaint. However, the court denied Lois's and Larry's request for a declaratory judgment.

¶ 15    In February 2013, Lyle filed a five-count amended countercomplaint against Larry, Linda, and Lois. Count I sought an accounting of the Trust's assets, count II sought an apportionment of liability for estate taxes, and count III alleged a breach of fiduciary duty by Larry and Lois. Counts IV and V of the amended countercomplaint were essentially reiterated versions of counts IX and X of Lyle's prior countercomplaint.

¶ 16    In March 2016, after the court noted that it had already disposed of counts IV and V of the amended countercomplaint, the court held a bench trial to resolve Lyle's remaining three counts. The court first issued its written decision in June 2016, before amending its order in

July 2016. Regarding counts I and II, the court calculated the total value of the Trust's assets for both federal and state estate-tax purposes and valuated each sibling's assets under the Trust. The court also awarded Leroy's former Arizona residence to Lois and considered this new disposition while apportioning each sibling's percentage of estate-tax liability. Finally, the court determined that Lyle's breach-of-fiduciary-duty claim was defeated by his own "unreasonable conduct," specifically, his "fail[ure] to communicate with his siblings regarding the tax obligations due to [the Internal Revenue Service] and State of Illinois" and his "fail[ure] to account for his dealings with the [T]rust." After the court denied Lyle's motion to reconsider, he filed his appeal in *Voga I*.

¶ 17    In *Voga I*, we held that neither the doctrines of election nor estoppel precluded Lyle from asserting count X of his original countercomplaint (which was subsequently repurposed as count V of his amended countercomplaint). For that reason, we reversed the trial court's dismissal of count X. Because the trial court's subsequent adjudication of counts I through III of the amended countercomplaint were dependent on the prior dismissal of count X, we also reversed the court's July 2016 judgment as to those counts and remanded the matter for a new trial. *Voga I*, 2017 IL App (2d) 160690, ¶ 62. While we declined to address the merits of count X, we did suggest that the Power of Attorney seemed to contradict the language of section 2-9:

> "Neither here nor elsewhere in the POA was there specific mention of the Trust. Consequently, Lyle has articulated a challenge that the Amendment is void *because the POA did not, contrary to section 2-9, specifically mention the Trust* in granting Linda the power to modify trusts of which Leroy was the trustor." (Emphasis added.) *Id.* ¶ 58.

¶ 18    Upon remand, Lyle filed a renewed motion for partial summary judgment on count V of his amended countercomplaint. In this motion, Lyle once again argued that the Amendment was unlawful because the Power of Attorney authorizing it failed to satisfy section 2-9 of the Act. Linda responded and filed a cross-motion for summary judgment, claiming that the Power of Attorney did not need to comply with section 2-9 because it was valid under section 2-4 of the Act. On August 8, 2018, the trial court took the matter under advisement.

¶ 19    On August 18, 2018, the court entered an order denying Lyle's motion for partial summary judgment and granting Linda's cross-motion for summary judgment. After acknowledging the conflict between sections 2-4 and 2-9 of the Act, the court found that invalidating the Amendment under section 2-9 would render section 2-4 a nullity and would also thwart Leroy's "clear and obvious intent" to allow Linda to amend the Trust. On December 28, 2018, the trial court denied Lyle's motion to reconsider.

¶ 20    On January 3, 2019, Lois filed a motion to obtain a final judgment order in order to settle the remaining three counts of Lyle's amended countercomplaint. She argued that, because the trial court once again confirmed the Amendment's validity, the parties were essentially in the same position that they were in immediately preceding our decision in *Voga I*. Therefore, according to Lois, it was not necessary to hold any additional proceedings to resolve the remaining counts because they were already adjudicated in July 2016 under similar circumstances. No parties objected to the motion or filed a response thereto, leading the court to grant Lois's motion on January 10, 2019. The order accompanying this decision incorporated the court's earlier July 2016 and August 2018 orders.

¶ 21    Lyle timely appealed the court's January 2019 order. Meanwhile, Lois initiated collection proceedings against him pursuant to both the July 2016 and January 2019 orders.

¶ 22      On March 18, 2019, the trial court provided Lois with a memorandum of the July 2016 judgment, confirming that a $59,264.16 judgment had been entered against Lyle in her favor. She obtained a third-party citation to discover assets from the Kendall County Clerk and provided the same to Lyle and his bank, Heartland Bank and Trust Company (Heartland). On March 29, 2019, Heartland answered the citation, and on April 2, 2019, Lois filed a motion for a turnover order.

¶ 23      On May 1, 2019, Lyle filed a motion to quash the third-party citation, which the trial court heard on May 9, 2019. Upon the conclusion of the hearing, the court entered orders dismissing Lyle's motion and directing Heartland to turn over $17,224.84 to Lois's counsel. Lyle timely appealed the May 2019 order also, and we consolidated both appeals.

¶ 24                              II. ANALYSIS

¶ 25      Lyle brings forth several arguments detailing perceived errors in the trial court's adjudication of his and Linda's cross-motions for partial summary judgment. First, Lyle contends that the court erred in denying his motion for partial summary judgment because the Power of Attorney did not comply with section 2-9 of the Act. Next, he argues that, regardless of section 2-9, the Power of Attorney violated the Trust's prohibitions against general powers of appointments and therefore could not have been the basis of any Trust amendment. Finally, he argues that the trial court relied on improper evidence when disposing of count V of his amended countercomplaint.

¶ 26      Because we agree that section 2-9 of the Act invalidates the Amendment, we need to address only Lyle's first argument to conclude this matter. However, we first must direct our attention to Lois's contentions regarding our jurisdiction over these consolidated appeals.

¶ 27                              A. Jurisdiction

¶ 28      As a preliminary matter, Lois argues that we lack jurisdiction over the pending appeals because the January 2019 order should be construed as a consent decree that did not represent a judicial determination of the parties' rights. However, because the January 2019 order did not amount to a consent decree, we conclude that we do have jurisdiction over this matter.

¶ 29      Before considering the merits of an appeal, a reviewing court must first ascertain whether it has jurisdiction over an appeal. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). Appellate courts generally lack jurisdiction over appeals from judgments that the parties have agreed to, which might be known as "agreed orders," "consent orders," or "consent decrees." *Grubert v. Cosmopolitan National Bank of Chicago*, 269 Ill. App. 3d 408, 411 (1995); *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 971 (2009). Such an order is more akin to a settlement than a judicial determination of the parties' rights, and absent fraud or public policy concerns, reviewing courts should not review what amounts to a settlement between parties. *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Ass'n*, 106 Ill. 2d 1, 8 (1985).

¶ 30      Reviewing courts have identified several factors to aid in the identification of consent decrees. *Sementa v. Tylman*, 230 Ill. App. 3d 701, 704 (1992). First, the title of a consent decree should ideally indicate that it was entered by agreement of the parties. *Bergman v. Rhodes*, 334 Ill. 137, 142 (1929); *Village of Mundelein v. Village of Long Grove*, 219 Ill. App. 3d 853, 862 (1991). Furthermore, the terms of a consent decree do not rely on underlying pleadings and

evidence—the decree's creation is "an independent undertaking." *Village of Mundelein*, 219 Ill. App. 3d at 862. Because a consent decree is contractual in nature, it should include documentation of the attorneys' unqualified consent to the order's terms. *City of Kankakee v. Lang*, 323 Ill. App. 14, 19 (1944). For example, the notation of the word "O.K." along with the parties' signatures on a judgment suggests the existence of a consent decree. *Id.* However, if a party to litigation marks or signs an order solely because he or she believes that it accurately reflects a judge's findings, such acquiescence to the form of the order does not transform it into a consent decree. *Sampson v. Village of Stickney*, 24 Ill. 2d 134, 139 (1962).

¶ 31    Lois claims that our supreme court's reasoning in *Massell v. Daley*, 404 Ill. 479 (1949), establishes that the January 2019 order was actually a consent decree and is therefore nonappealable. We disagree.

¶ 32    In *Massell*, several nightclub owners sued the State to enjoin it from collecting taxes on certain food and beverage sales. *Id.* at 480. According to the owners, they were exempted from the tax because their meal sales were incidental to their primary business of providing entertainment to their patrons. *Id.* The trial courts entered a series of decrees stating that the respective plaintiffs were not subject to the disputed taxes. *Id.* at 481-82. The judgments included notations from the defendants indicating compliance with the substance of the decrees, such as "[c]hecked and found correct" and "[n]o objection basis [plaintiff] engaged primarily in entertainment business." (Internal quotation marks omitted.) *Id.* Our supreme court inferred that the judgments were consent decrees, presumably based on the defendants' notations. *Id.* at 483-84.

¶ 33    Lois's reliance on *Massell* is unavailing because the supreme court did not explain *why* it concluded that the judgments were agreed orders. However, even if *Massell* were relevant, it is nevertheless clearly distinguishable.

¶ 34    First, in contrast to the consent decrees described in *Massell*, the January 2019 order did not contain any notations indicating any type of settlement or agreement between the parties. No party signed the order. Next, unlike in *Massell*, the record here contains no suggestion of an agreed order. No portion of the record identifies the January 2019 order as a "consent decree," "agreed order," or "consent order."

¶ 35    Instead, the January 10, 2019, hearing establishes that the January 2019 order was sought as a result of the trial court's previous denial of Lyle's motion to reconsider. Therefore, the order was based on a judicial determination of the parties' rights instead of a settlement agreement. The January 2019 order incorporated the court's earlier July 2016 and August 2018 orders, both of which also represented judicial determinations of the parties' rights. Lois points to no portion of the record that clearly indicates that Lyle agreed to any of the determinations made in any of the incorporated orders. Although Lyle did not object to the entry of the January 2019 order, his silence alone cannot reasonably be construed as acceptance of a settlement.

¶ 36    For these reasons, it is abundantly clear that the January 2019 order represented a judicial determination and not an agreed settlement of the parties. We therefore have jurisdiction over these appeals and turn to the merits of Lyle's arguments concerning the validity of the Amendment.

¶ 37                                    B. Linda's Authority to Amend the Trust

¶ 38       Lyle first argues that Linda could not lawfully amend the Trust because the Power of Attorney failed to comply with section 2-9 of the Act. We agree. The interpretation of the Act is a question of law, which we must review *de novo*. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 13.

¶ 39       When interpreting a statute, a court's primary concern is ascertaining the legislature's intent. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (2009). A statute's language, given its plain and ordinary meaning, is the best indicator of that intent. *Id.* Furthermore, courts should avoid interpretations that render a statute meaningless or that lead to absurd results. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 363 (1986). "It is also a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision, either in the same or in another act, both relating to the same subject, the specific provision controls and should be applied." *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002).

¶ 40       Lyle argues that section 2-9 of the Act renders the Amendment void. Section 2-9 provides that "[a]n agent may not revoke or amend a trust revocable or amendable by the principal *** *without specific authority and specific reference to the trust in the agency*." (Emphasis added.) 755 ILCS 45/2-9 (West 2006). According to Lyle, the Power of Attorney did not contain any specific reference to the Trust. Therefore, pursuant to section 2-9, Linda could not lawfully amend the Trust.

¶ 41       On the other hand, Lois and Linda argue that section 2-4 of the Act authorized Linda to amend the Trust under the Power of Attorney. Under section 2-4, "the provisions of the [power of attorney] will control notwithstanding [the] Act." 755 ILCS 45/2-4(a) (West 2006). According to Lois and Linda, any failure to comply with section 2-9's specificity requirements would be irrelevant because section 2-4 mandates that the Power of Attorney controls notwithstanding the Act.

¶ 42       A few considerations guide our analysis. First, as evidenced by the disparate results that each section's application entails, sections 2-4 and 2-9 clearly conflict with one another. Furthermore, sections 2-4 and 2-9 both pertain to the same topic—powers of attorney. However, while section 2-4 provides that a power of attorney controls over conflicting portions of the Act, section 2-9 governs a more specific topic: trust administration within the context of powers of attorney. Therefore, turning to the rule favoring the application of a specific statute over a conflicting, general statute, these considerations lead us to conclude that section 2-9 controls and consequently invalidates the Amendment. See *Harms*, 202 Ill. 2d at 459.

¶ 43       In order to avoid this conclusion, Linda argues that the two sections do not necessarily conflict because they were meant to apply to two different situations. She argues that section 2-4 applies only to powers of attorney that contain their own provisions regarding trust amendments. However, according to Linda, if a power of attorney does not set forth its own mechanisms for amending trusts, section 2-9 governs and should be used as a gap-filler.

¶ 44       This construction of the Act violates at least three cardinal rules of statutory interpretation. First, Linda's proposed interpretation would lead to absurd results. See *Harris*, 111 Ill. 2d at 363. If section 2-9 applied only to powers of attorney that omitted any reference to trust amendments, then its requirements would bind only *nonexistent* agency provisions. The suggestion that the legislature intended nonexistent contractual provisions to conform to section 2-9 is patently absurd. *Id.*

¶ 45    Second, because Linda's interpretation consequently fails to provide for any reasonable application of section 2-9, her construction of the Act violates another rule of statutory interpretation by rendering section 2-9 meaningless. *Id.* Linda argues that our interpretation of the Act would similarly render sections 2-4 and 3-3 (755 ILCS 45/3-3 (West 2006)) of the Act a nullity. We disagree. Once a specific statute has been found to govern over a conflicting, general statute, the specific statute should be construed as an exception to the general one. *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 31. Therefore, under our interpretation of the Act, section 2-4 still *generally* applies to agency provisions aside from those specifically addressing trust amendments. On the other hand, Linda's interpretation of the Act provides for no reasonable application of section 2-9 whatsoever.

¶ 46    Section 3-3 of the Act is also unblemished by our interpretation because it can be read in harmony with section 2-9. In relevant part, section 3-3 provides that "[n]onstatutory property powers must be executed by the principal *and designate the agent and the agent's powers, but they need not be acknowledged or conform in any other respect to the statutory property power*." (Emphasis added.) 755 ILCS 45/3-3 (West 2006). Otherwise put, this section specifies that nonstatutory powers of attorney must comply only with any of the Act's provisions regarding the designation of an agent and the agent's powers. Because section 2-9 governs the designation of an agent's powers to amend trusts, section 3-3 consequently requires nonstatutory powers of attorney to comply with section 2-9.[2]

¶ 47    Third, Linda's interpretation of the Act violates the rule favoring the application of a specific statute over that of a conflicting, general statute. See *Harms*, 202 Ill. 2d at 459.

¶ 48    Nonetheless, Lois argues that *Brown Brothers Harriman Trust Co. v. Bennett*, 357 Ill. App. 3d 399 (2005), which involved a statute sharing some language with section 2-4, leads to a different conclusion. However, because that case is inapplicable, we disagree.

¶ 49    In *Brown Brothers*, the court sought to determine whether a trust could allocate certain expenses to the trust's income instead of its principal. *Id.* at 402. There, the respondents argued that section 14 of the Principal and Income Act (760 ILCS 15/14 (West 2002)) required the expenses to be equally apportioned between the trust's income and its principal. *Brown Brothers*, 357 Ill. App. 3d at 403. However, the petitioners argued that section 3(a) of that same act (760 ILCS 15/3(a) (West 2002)) granted trustors the authority to set their own guidelines for apportionments, notwithstanding that act's other provisions. *Id.* at 404. After noting multiple provisions in the Principal and Income Act that reinforced the petitioners' interpretation, the court chose to adhere to section 3(a) by retaining the apportionments. *Id.* at 406. After doing so, the court suggested that section 14 may nonetheless find use as a gap-filler in trusts that do not otherwise provide their own guidelines for apportionments. *Id.* at 409.

¶ 50    Here, although section 3(a) of the Principal and Income Act and section 2-4 of the Act both specify that certain estate planning tools might conflict with and consequently override their respective acts, *Brown Brothers* is nonetheless inapplicable. Although the court there found

---

[2]Linda also suggests that section 2-9 was intended to apply only to statutory powers of attorney. Therefore, because the Power of Attorney was nonstatutory, Linda asserts that section 2-4 controls as a matter of law. However, Linda's argument is forfeited because she has offered no authority whatsoever that explicitly provides that section 2-9 is so limited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

multiple supporting provisions of the Principal and Income Act to establish section 3(a)'s predominance over section 14, there are no analogous provisions within the Act that suggest that section 2-4 should similarly control over section 2-9. *Id.* at 406. Furthermore, while *Brown Brothers* still left section 14 with use as a gap-filler, as we discussed earlier, allowing section 2-4's language to control over section 2-9 would violate a canon of construction by rendering the latter provision a nullity. *Id.* at 409. Therefore, because of these differences between the Principal and Income Act and the Act, *Brown Brothers* does not provide us with any guidance and we reject Lois's argument on this point.

¶ 51 Alternatively, Lois argues that, even if section 2-9 controls, the Power of Attorney satisfied that section's specificity requirements because it allowed Linda to amend only trusts in which Leroy was the grantor. Lois also claims that it would be unfair to require the Power of Attorney to specifically name the Trust because the Trust has several aliases that various parties have used in previous settings.

¶ 52 These arguments are misguided. There is no way that Leroy could have authorized Linda to amend anyone's trust but his own, so limiting her authority to trusts in which he is the grantor is tautological. Furthermore, while the record does indicate that the Trust was referred to differently in different contexts, the Power of Attorney did not refer to the Trust in *any* specific way whatsoever. Therefore, we need not decide whether references to any of a trust's aliases satisfy section 2-9.

¶ 53 Finally, Lois and Linda argue that we should disregard section 2-9 in order to fulfill Leroy's intentions. Both parties suggest that doing otherwise would frustrate his attempts to properly plan his estates and would unduly limit his testamentary freedoms. Unfortunately, neither of these arguments enables us to simply ignore section 2-9's clear mandates. We agree that courts should preserve the freedom to manage one's own estate, but we note that the Act provides guidelines to ensure that principals clearly record their testamentary intentions.

¶ 54 For these reasons, we find that the Power of Attorney failed to satisfy section 2-9 of the Act. Consequently, because the Power of Attorney did not authorize Linda to amend the Trust, the Amendment is void. We reverse the trial court's dismissal of count V of the amended countercomplaint and vacate the order granting Linda summary judgment as to that same count. Because the trial court based its January 2019 order on the wrongful dismissal of count V, we also reverse that order and the May 2019 orders stemming therefrom.

¶ 55                                        III. CONCLUSION

¶ 56 For the reasons stated, we reverse the judgment of the circuit court of Kendall County in appeal No. 2-19-0108, vacate the judgment in appeal No. 2-19-0550, and remand for further proceedings consistent with this opinion.

¶ 57 No. 2-19-0108, Reversed and remanded; No. 2-19-0550, Vacated.