# Illinois Official Reports

## Appellate Court

---

### *Sunnyside Elgin Apartments, LLC v. Miller*, 2021 IL App (2d) 200614

---

| | |
|---|---|
| Appellate Court Caption | SUNNYSIDE ELGIN APARTMENTS, LLC, *et al.*,* Plaintiffs-Appellants, v. GLENDA MILLER, in Her Official Capacity as McHenry County Treasurer and *ex officio* McHenry County Collector, Defendant-Appellee (The Board of Education of Riley Community Consolidated School District No. 18, Intervenor-Appellee). |
| District & No. | Second District<br>No. 2-20-0614 |
| Filed | June 29, 2021 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 18-TX-5; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Timothy P. Dwyer, of Chicago, for appellants.<br><br>Kevin B. Gordon, of Kriha Boucek, LLC, of Oakbrook Terrace, for appellee Board of Education of Riley Community Consolidated School District No. 18.<br><br>No brief filed for other appellees. |

---

*See Appendix for a complete list of "Plaintiffs-Appellants." *Infra* ¶¶ 40-41.

JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices McLaren and Hutchinson concurred in the judgment and opinion.

## OPINION

¶ 1      At issue in this appeal is whether the trial court properly granted the motion to dismiss, based on lack of standing, that was filed by intervenor, Board of Education of Riley Community Consolidated School District No. 18 (Riley School). More specifically, we consider whether one of the plaintiffs, Brookside Meadows Condominium Association, Inc. (Brookside), has standing to object to the property taxes levied against individual condominium owners of Brookside. For the reasons that follow, we determine that Brookside has standing. Thus, we reverse the judgment granting Riley School's motion to dismiss and remand for further proceedings.

## I. BACKGROUND

¶ 2

¶ 3      Plaintiffs—Sunnyside Elgin Apartments, LLC, Brookside, and others—are condominium associations, townhome associations, and homeowner associations. For several years, plaintiffs have filed complaints against defendant, Glenda Miller, in her official capacity as McHenry County Treasurer and *ex-officio* McHenry County Collector, and other public officials and entities. See 35 ILCS 200/23-15(a) (West 2018). These suits, filed on behalf of individual homeowners, sought relief from property taxes levied against the homeowners. Plaintiffs alleged excess accumulation claims. At issue in some of these prior suits was whether condominium associations, townhome associations, and homeowner associations have standing to sue on behalf of individual homeowners. In at least three cases, the trial courts have found that these associations lacked standing.[1] In one case, the trial court concluded that these associations had associational standing.[2]

¶ 4      In November 2018, as in prior years, plaintiffs filed a tax-objection complaint against defendant under sections 23-10 and 23-15 of the Property Tax Code (Code) (*id.* §§ 23-10, 23-15). Plaintiffs alleged: (1) "[each] of the Associations named herein are authorized by statute and its By-Laws or Declaration to petition for tax relief on behalf of the Association constituents"; (2) "[each] of the Associations named herein have, by its Board of Managers under a 2/3 affirmative vote, authorized the named Associations to participate in this Tax Objection complaint on behalf of its constituents"; and (3) "[each] of [the] Associations herein have, in accordance with state law, recorded a Declaration which allows the Association to petition for tax relief, in a representative capacity, based upon state law." Plaintiffs also alleged that "all of the 2017 real estate taxes (payable in 2018) for each parcel listed in exhibit B were paid in full by Plaintiff or Plaintiffs' agents." Exhibit B listed the individual parcel numbers (PIN) for each individual homeowner. Plaintiffs argued that the individual homeowners were entitled to a refund with accrued interest for the 2018 property taxes levied against the individual homeowners.

---

[1]These cases included case Nos. 15-TX-5, 16-TX-30, and 17-TX-11.

[2]This was case No. 19-TX-4.

¶ 5        One of the plaintiffs, Brookside, objected to the 2018 property taxes levied against 22 individual condominium owners of Brookside. Although these individuals were identified by PIN numbers in exhibit B, they were not individually named and did not sue in their individual capacities. A cursory examination of exhibit B reflects that the value of each condominium of Brookside ranged from $54,894 to $69,465, with the amount of property taxes owed being between $5124.30 and $7673.52. Although plaintiffs' complaint alleged that Brookside or its agent paid the property taxes for the individual condominium owners, Brookside made clear at oral argument that that was "obviously" not true.

¶ 6        One of the public entities that plaintiffs identified in their complaint was Riley School, whose district covers, among others, residents of Brookside. Plaintiffs alleged that Riley School had an excess accumulation in the (1) education fund (count XIV), (2) transportation fund (count XVI), (3) operations and maintenance fund (count XVII), and (4) liability and insurance fund (count XVIII).

¶ 7        After plaintiffs filed the complaint, Riley School moved to intervene, claiming that defendant could not adequately represent Riley School's interests. The trial court granted that motion, and Riley School moved to dismiss the counts brought against it. See 735 ILCS 5/2-619 (West 2018). Riley School alleged, among other things, that Brookside did not have standing to sue. See *id.* § 2-619(a)(9). More specifically, Riley School asserted that, under section 23-15 of the Code, only the person who pays the property tax may file a tax-objection complaint. Because Brookside did not pay the property taxes on behalf of the individual condominium owners, Riley School claimed that Brookside lacked standing to sue on behalf of the individual condominium owners. Riley School noted that the Code prohibits class action tax-objection suits. See 35 ILCS 200/23-15(a) (West 2018).

¶ 8        Brookside responded. It noted that, although the Code might provide that only a "person" may file a tax-objection complaint, sections 1-125 and 23-5 of the Code (*id.* §§ 1-125, 23-5) recognize that a "person" can be a condominium association. Thus, Brookside claimed that it could file a tax-objection complaint on behalf of individual condominium owners. Moreover, Brookside argued that section 10(c) of the Condominium Property Act (Act) (765 ILCS 605/10(c) (West 2018)) allows condominium associations to act on behalf of condominium owners in seeking relief from tax assessments and levies. Finally, Brookside asserted that, in *Deerpath Consolidated Neighborhood Ass'n v. Lake County Bord of Review*, 2018 IL App (2d) 180244-U, this court recognized that a condominium association has associational standing to sue in tax cases.

¶ 9        Riley School replied, noting that *Deerpath* cannot be relied on because it is an unpublished opinion from 2018. Moreover, Riley School observed that, although the Code may consider an association a "person," only the "person" who pays the taxes has standing to file a tax-objection complaint. Riley School reiterated that Brookside lacked standing to sue because it did not pay the property taxes for the individual condominium owners. Regarding Brookside's claim that it had standing under section 10(c) of the Act, Riley School noted that the Act allows an association to seek tax relief on behalf of individual unit owners only when that tax relief concerns common-interest property. In contrast, the tax relief that Brookside sought concerned individual condominium owners' property taxes, not taxes imposed on common-interest property. Moreover, Riley School argued that the Act does not apply, as our supreme court has determined that tax-objection complaints are governed by the Code. See *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 495 (2008).

¶ 10    The trial court granted Riley School's motion to dismiss. In doing so, the court found, under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that "there [was] no just reason for delaying either enforcement or appeal, or both." This timely appeal followed.

¶ 11                                II. ANALYSIS

¶ 12    At issue in this appeal is whether Riley School's motion to dismiss, based on a lack of standing, was properly granted. "A dismissal based on lack of standing is entered pursuant to section 2-619(a)(9) of the Code of Civil Procedure. [735 ILCS 5/2-619(a)(9) (West 2018)]." *Illinois Road & Transportation Builders Ass'n v. County of Cook*, 2021 IL App (1st) 190396, ¶ 15. "A complaint need not allege facts establishing standing." *Id.* ¶ 16. Rather, "lack of standing is an affirmative defense, placing the burden on the [party moving to dismiss] to 'plead and prove lack of standing.' " *Id.* (quoting *International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security*, 215 Ill. 2d 37, 45 (2005)). We review *de novo* the dismissal of a complaint for lack of standing. *Id.*

¶ 13    Riley School claims that the court properly granted its motion to dismiss because, under the Code, only the person paying the property taxes has standing to file a tax-objection complaint. Because Brookside never paid the individual condominium owner's property taxes, Riley School argues that Brookside lacks standing. Brookside argues that the court should have denied the motion because the Act allows an association to challenge property taxes levied against individual homeowners.

¶ 14    Resolving the propriety of the ruling on the motion to dismiss requires us to examine various sections of the Code and Act. In doing so, we follow well-settled rules of statutory interpretation. "When interpreting a statute, a court's primary concern is ascertaining the legislature's intent." *Centrue Bank v. Voga*, 2020 IL App (2d) 190108, ¶ 39. "A statute's language, given its plain and ordinary meaning, is the best indicator of that intent." *Id.* "[C]ourts should avoid interpretations that render a statute meaningless or that lead to absurd results." *Id.* Moreover, " 'court[s] may not supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law' " if doing so would depart from the plain language of the statute. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005) (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309-10 (2001)).

¶ 15    With these principles in mind, we turn first to sections 23-5 and 23-10 of the Code. Section 23-5 of the Code provides for "Payment under protest." 35 ILCS 200/23-5 (West 2018). In relevant part, it states:

> "Beginning with the 1994 tax year in counties with 3,000,000 or more inhabitants, and beginning with the 1995 tax year in all other counties, if any person desires to object to all or any part of a property tax for any year, for any reason other than that the property is exempt from taxation, *he or she shall pay all of the tax due* within 60 days from the first penalty date of the final installment of taxes for that year." (Emphasis added.) *Id.*

¶ 16    Section 23-10 provides for "Tax objections." *Id.* § 23-10. In relevant part, it states:

> "Beginning with the 2003 tax year, in counties with less than 3,000,000 inhabitants, *the person paying the taxes due* as provided in Section 23-5 *may file a tax objection complaint* under Section 23-15 within 75 days after the first penalty date of the final installment of taxes for the year in question." (Emphases added.) *Id.*

¶ 17    Read together, the plain and unambiguous language of sections 23-5 and 23-10 of the Code provides that an objection to property taxes may be considered if (1) all of the property taxes are paid and (2) the person paying the taxes files a tax-objection complaint. As Riley School has repeatedly noted, and Brookside admits, Brookside never paid the property taxes for any individual condominium owner.

¶ 18    Brookside argues that the Act permits an association to file a tax-objection complaint on behalf of individual property owners. Resolving whether that is correct requires us to interpret portions of the Act in light of sections 23-5 and 23-10 of the Code. In doing so, we again follow well-settled rules of statutory construction (*supra* ¶ 14), especially, as provided below, those rules that concern the collective construction of statutes.

¶ 19    "Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible." *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). "Even when an apparent conflict between statutes exists, they must be construed in harmony with one another if reasonably possible." *Id.* "It is also a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision, either in the same or in another act, both relating to the same subject, the specific provision controls and should be applied." *Id.*

¶ 20    Turning to the provisions of the Act that Brookside argues control, we first examine section 9.1 of the Act (765 ILCS 605/9.1 (West 2018)). Section 9.1 of the Act concerns mechanic liens and other liens securing indebtedness and outlines the "Board of Managers' standing and capacity." In relevant part, it provides:

> "(a) *** Subsequent to the recording of the declaration, no liens of any nature shall be created or arise against any portion of the property except against an individual unit or units. No labor performed or materials furnished with the consent or at the request of a particular unit owner shall be the basis for the filing of a mechanics' lien claim against any other unit. If the performance of the labor or furnishing of the materials is expressly authorized by the board of managers, each unit owner shall be deemed to have expressly authorized it and consented thereto, and shall be liable for the payment of his unit's proportionate share of any due and payable indebtedness as set forth in this Section.
>
> * * *
>
> (b) ***
>
> The *board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit*, on behalf of the unit owners, as their interests may appear." (Emphasis added.) *Id.* § 9.1(a), (b).

¶ 21    Brookside also argues that section 10 of the Act grants associations standing to sue on behalf of individual condominium owners. *Id.* § 10. Section 10 of the Act concerns "Separate taxation." *Id.* In relevant part, it provides:

> "(a) *Real property taxes*, special assessments, and any other special taxes or charges of the State of Illinois or of any political subdivision thereof, or other lawful taxing or assessing body, which are authorized by law to be assessed against and levied upon real property shall be assessed against and levied upon each unit and the owner's

corresponding percentage of ownership in the common elements as a tract, and not upon the property as a whole. For purposes of property taxes, real property owned and used for residential purposes by a condominium association, including a master association, but subject to the exclusive right by easement, covenant, deed or other interest of the owners of one or more condominium properties and used exclusively by the unit owners for recreational or other residential purposes shall be assessed at $1.00 per year. The balance of the value of the property shall be assessed to the condominium unit owners. ***

   ***

(c) Upon authorization by a two-thirds vote of the members of the board of managers *** *the board of managers acting on behalf of all unit owners shall have the power to seek relief from or in connection with the assessment or levy of any such taxes*, special assessments or charges, and to charge and collect all expenses incurred in connection therewith as common expenses." (Emphases added.) *Id.* § 10(a), (c).

¶ 22    Reading these provisions of the Act together, Brookside argues that it has standing to sue on behalf of the individual condominium owners. More specifically, Brookside argues that section 9.1(b) expressly gives it standing and that "any such taxes" in section 10(c) refers back to the "[r]eal property taxes, special assessments, and any other special taxes or charges" denoted in section 10(a). Thus, because, as alleged in plaintiffs' complaint, the board of managers at Brookside, by a proper vote, gave Brookside the authority to act on behalf of individual condominium owners in seeking relief from the imposition of improper property taxes, Brookside claims that it has standing to sue.

¶ 23    Riley School argues that, though section 9.1(a) confers standing on associations, such standing does not extend to tax-objection proceedings, because the "matters involve[ed]" mentioned in section 9.1(b) are restricted to the mechanic liens and other indebtedness identified in section 9.1(a). Section 9.1 has no application, Riley School contends, to a tax-objection complaint. Moreover, Riley School argues that section 10 was enacted only to protect individual homeowners from other individual homeowners' failures to pay property taxes on their units or proportionate shares of the common elements. Because that situation is not present here, Riley School argues that section 10 of the Act does not apply.

¶ 24    We agree with Brookside. Riley School's interpretation of the Act runs afoul of how it interprets the Code. Riley School has repeatedly argued that, under the Code, only the person who paid the property taxes has standing to file a tax-objection complaint. Yet Riley School concedes that sections 10(a) and (c) of the Act provide that an association may act on behalf of individual condominium owners in a tax-objection case when the taxes concern common-interest property. Riley School's positions are in conflict, however, because taxes imposed on common-interest property, like property taxes on individual units, are paid by the individual property owners, not an association. See *id.* § 10(a). Thus, under Riley School's interpretation of the Code, Brookside would not have standing to represent individual condominium owners in tax-objection cases even when the objection concerns only taxes imposed on common-interest property. Such an interpretation would render an association's "power to seek relief from *** any such taxes" (*id.* § 10(c)) imposed on common-interest property a nullity in light of the Code.

¶ 25    Interpreting the Act as Brookside proposes—as permitting an association to represent individual property owners in a tax-objection complaint—allows us to construe the Code and

the Act harmoniously. The Code provides that, if a "person" desires to object to the property taxes imposed, that person *shall* first pay all the taxes due. 35 ILCS 200/23-5 (West 2018). Once the taxes are paid, the person who paid the taxes *may* file a tax-objection complaint. *Id.* § 23-10. Generally, the legislature's use of "may" is interpreted as permissive, while its use of "shall" is taken as mandatory. *People v. Reed*, 177 Ill. 2d 389, 393 (1997). If the legislature wanted to permit only the person who paid the property taxes to file a tax-objection complaint, it would have used language strictly limiting the filing of such complaints to those who paid the taxes. The legislature did not do that. Rather, the legislature indicated that "the person paying the taxes due *** *may* file a tax objection complaint" (emphasis added) (35 ILCS 200/23-10 (West 2018)), which implies that other "person[s]," such as Brookside, who did not pay the property taxes, may also file a tax-objection complaint. See *id.* § 1-125 (defining "person" or "persons" as "[m]ale, female, corporation, company, firm, society, singular or plural number"). If we were to read the Code as saying that only the person who paid the property taxes may file a tax-objection complaint, we would be reading into section 23-10 of the Code limitations that the legislature did not provide. *King*, 215 Ill. 2d at 26 (citing *In re Marriage of Beyer*, 324 Ill. App. 3d at 309-10). We simply cannot do that. *Id.*

¶ 26   Reading the Code as providing that an association like Brookside can file a tax-objection complaint on behalf of individual condominium owners is consistent with the Act. Specifically, we determine that "any such taxes" mentioned in section 10(c) of the Act refers to, among other things, the "[r]eal property taxes" that are "assessed against and levied upon each unit" mentioned in section 10(a). 765 ILCS 605/10(a), (c) (West 2018). Nothing in section 10(c) of the Act limits "any such taxes" to taxes imposed on common-interest property. If we were to conclude that "any such taxes" refers solely to taxes imposed on common-interest property, we would be reading into section 10(c) of the Act " 'exceptions, limitations, or conditions,' " which we must not do. *King*, 215 Ill. 2d at 26 (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d at 309-10). Section 9.1 of the Act further supports our position that Brookside has standing, as that section specifically provides that an association has standing to act in a representative capacity for "matters" concerning "more than one unit." 765 ILCS 605/9.1(b) (West 2018). Seeking on behalf of individual condominium owners a refund plus interest for Riley School's excessive accumulation funds certainly is a "matter" affecting "more than one unit." *Id.* Accordingly, we determine that Brookside, serving as a representative for the 22 individual condominium owners in this tax-objection case, has standing under the Code and the Act.

¶ 27   Even if we could not harmoniously construe the Code and the Act, we would still conclude that the Act controls, as the Act specifically addresses associations representing individual condominium owners in tax cases. See *Harms*, 202 Ill. 2d at 459. Moreover, we note that our position is not inconsistent with our supreme court's decision in *Madison*. There, in determining whether taxing districts may petition to intervene in property tax-objection cases, the court observed that "[t]he procedures set forth in the [Code] regulating tax objections in the circuit court govern whenever 'any person desires to object to all or any part of a property tax for any year, for any reason' *** and apply, without limitation, to objections to taxes, levies or assessments [citation]." (Emphases omitted.) *Madison*, 227 Ill. 2d at 495. As indicated, "any person" includes associations like Brookside. See 35 ILCS 200/1-125 (West 2018).

¶ 28   In reaching our conclusion that Brookside has standing under the Code and the Act, we note that, even if the Code and the Act did not give Brookside standing, Brookside would have standing under the doctrine of associational standing. *International Union*, 215 Ill. 2d at 57 (if

an association meets the associational standing test under *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977), it does not have to meet other standing requirements independently).

¶ 29 "Associational standing refers to the ability of an association to sue as a representative body on behalf of its members." *Illinois Road & Transportation Builders*, 2021 IL App (1st) 190396, ¶ 19. "The doctrine 'is firmly established in federal law' and was first adopted in Illinois in *International Union*, 215 Ill. 2d at 48." *Id.*

¶ 30 "Our supreme court expressly adopted the test for associational standing from the United States Supreme Court in *Hunt* ***." *Id.* "In *Hunt*, *** the Supreme Court articulated a three-part test to determine if an association has standing to sue on behalf of its constituent members." *Id.* ¶ 20.

> "An association will have standing to sue on behalf of its members when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *Id.* (quoting *Hunt*, 432 U.S. at 343).

¶ 31 We conclude that Brookside has met the test for associational standing. The 22 individual Brookside condominium owners have standing to sue in their own capacity. Indeed, Riley School has claimed all along that the individual condominium owners should file tax-objection complaints. Moreover, we note that plaintiffs need not identify one of the associations' members to properly bring its claims (see *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th), 190334, ¶ 27). Thus, part (a) of the *Hunt* test is met.

¶ 32 Under part (b) of the test, "germaneness" is defined as "undemanding," requiring simply a "pertinence between [the] litigation subject and organizational purpose." *Humane Society of the United States v. Hodel*, 840 F.2d 45, 58 (D.C. Cir. 1988). Under that standard, the interests Brookside seeks to protect are germane to its purpose. In the complaint, plaintiffs, which included Brookside, alleged that their bylaws or declarations authorized them to bring tax-objection complaints on behalf of the individual property owners. Consistent with Illinois law, as discussed above, tax objections are germane to a condominium association's purpose, provided that the association is duly authorized to act on behalf of its members. See 765 ILCS 605/10 (West 2018). No one claims Brookside is acting without the proper authorization.

¶ 33 Turning to part (c), the claim for a refund plus interest of Riley School's excess accumulation does not require the participation of all 22 individual condominium property owners. All the evidence needed to establish a right to the refund—the levies, taxes assessed, and amount paid per condominium unit—is a matter of public record and easily proven with official documents. Indeed, most of, if not all, the evidence needed is reflected in exhibit B attached to plaintiffs' complaint.

¶ 34 In reaching our conclusion that Brookside has associational standing, we note that Brookside's purpose in seeking tax relief for its members is not inconsistent with the authority that the Act gives associations. Specifically, the Act provides that a "Unit Owners' Association," of which "[e]ach unit owner shall be a member of the association" and "shall have those powers and responsibilities specified in the 'General Not For Profit Corporation

- 8 -

Act of 1986'." *Id.* § 18.3.[3] Although section 103.5(a)(25) of the General Not For Profit Corporation Act of 1986 (Not for Profit Act) (805 ILCS 105/103.05(a)(25) (West 2018)) provides that condominium associations may be organized for the "[a]dministration and operation of property owned on a condominium basis or by a homeowner association," nothing indicates that associations are limited to simply administering and operating condominium property. Indeed, section 103.10(b) of the Not for Profit Act (*id.* § 103.10(b)) provides that an association may bring suit on behalf of individual members, "provid[ed that] the interests it seeks to protect are germane to the corporation's purposes, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." As noted above, the interests Brookside seeks to protect are germane to its purpose, and neither the claim asserted nor the relief Brookside seeks requires the participation of the 22 individual condominium owners.

¶ 35    In determining that Brookside has standing, we observe that *Deerpath* is of little value here. First, it is an unpublished opinion from 2018, which is not precedential. See Ill. S. Ct. R. 23(b), (e)(1) (eff. Jan 1, 2021). Second, we determined in *Deerpath* that, given an insufficient record, the affirmative defense of lack of standing was not established. *Deerpath*, 2018 IL App (2d) 180244-U, ¶¶ 21-22. That conclusion does not aid this court in resolving the issue of standing here.

¶ 36    As a final matter, we would be remiss if we did not comment on the less than clear guidance the Code and the Act provide. The legislature is free to revisit the statutes if it sees fit to do so.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, we reverse the judgment of the circuit court of McHenry County and remand for further proceedings.

¶ 39    Reversed and remanded.

---

[3]Interestingly, under Riley School's interpretation of the Code, if "each unit owner" is a member of an association, then the association could file a tax-objection complaint on behalf of the owners if all the owners paid their property taxes, because, according to Riley School, the "person" paying the taxes has standing to file a tax-objection complaint. See 35 ILCS 200/1-125, 23-5, 23-10 (West 2018). The "person" paying the taxes are all members of the association under the Not for Profit Act.

The following is a listing of all "Plaintiffs-Appellants" involved in this appeal:

SUNNYSIDE ELGIN APARTMENTS, LLC; WKS CRYSTAL LAKE, LLC; CRYSTAL CORNERS, LLC; CRYSTAL HOME STATE BANK TRUST NO. 3072; INLAND CRYSTAL POINT, LLC; SMK ENTERPRISES; TI CRYSTAL LAKE, LLC; EISENMANN CORPORATION; CLK ENTERPRISES, LLC; MERRYMAN I, LLC; SCSA, LLC (COLONIAL ICE CREAM, INC.); BRILLIANCE LAND MANAGEMENT, LLC; LAZZARA PROPERTIES, LLC; COACH HOUSES OF CHASEFIELD CROSSING NO. 1 CONDO ASSOCIATION; CRYSTAL LAKE APARTMENTS LTD. PARTNERSHIP; MENARD, INC.; BRIXMOR CRYSTAL LAKE; FUHLER PROPERTIES; FORWARD CAPITAL, LLC; DEL BOCA VISTA, LLC; 651 JCMTN, LLC; STAG HARVARD, LLC; BUILDING IL LLC; GERALD R. FORSYTHE; NEW MIDWEST RENTALS LLC; FIRST MIDWEST BANK TRUST NO. 13040; SUNNYSIDE GARDEN APARTMENTS LLC; BAMO II A REO OFFICE LLC; BAMO II A REO IND LLC; KATHLEEN M. and LEONIDA C. ATHANS; MCS LAND LLC; BECKER FAMILY REVOCABLE TRUST; WILLIAM JACK DAVENPORT; LAKEWOOD 1 OF ATHANS HOLDING; KARA C. CURRAN; PAULA MUNTZENBERGER; 9401 ACKMAN LLC; CAPITAL CROSSING SERVICES COMPANY LLC; VISIONARY PROPERTIES IL LLC; RICHARD C. CRANDALL JR.; GEORGE C. ATHANS; ATHANS COMPANY; LISA M. ACOSTA; ALFONSO M. ACOSTA; 930 PYOTT LLC; GRAND PREM TRUST INVESTMENT 595112; 740 JENNINGS LLC; POLARIS JENNINGS LITH LLC; RIGGSBY CONSTRUCTION II; MARK RIGGSBY; RIGGSBY RENTAL LLC; PODKAZ LLC; ALDI INC.; SOLTIS FAMILY LLC; CRYSTAL ST LLC; FIRST MIDWEST BANK TRUST 12871, FIRST MIDWEST BANK TRUST 13010; FIRST AMERICAN BANK TRS TRUST 96 7 7018; LBUBS 2005 C5 RANDALL RD LLC; M E LLC; SPRING RIDGE MANOR HOME CONDOMINIUM ASSOCIATION; DAYTON HUDSON CORPORATION (TARGET); THE ASHTON POINTE AT CRYSTAL LAKE CONDOMINIUM ASSOCIATION; CRYSTAL LAKE SHOPS, LLC; THE CRYSTAL IN THE PARK UNIT ONE HOMEOWNERS ASSOCIATION; WESTWOOD PARK CONDOMINIUMS OF CRYSTAL LAKE ASSOCIATION; PINGRY PLACE HOMEOWNERS ASSOCIATION; REDMOND MURPHY; SPRING RIDGE OF CRYSTAL LAKE UMBRELLA ASSOCIATION; ATKINSON AGENCY, LLC (CENTRAL PARK PLACE); MJK CRYSTAL LAKE REAL ESTATE HOLDINGS; CRYSTAL CHATEAU CONDOMINIUM ASSOCIATION, INC.; INDIAN HILL TRAILS PROPERTY OWNERS ASSOCIATION, INC.; JACKSON ENTERPRISES, LLC; WALNUT GLEN TOWNHOME ASSOCIATION; HE TREES CONDOMINIUM ASSOCIATION; CHESAPEAKE HILLS CONDOMINIUMS OF MCHENRY ASSOCIATION; VICTOR A. CRISCI; PAUL and PENNY KRIEG; COUNTYLINE TOWNHOMES CONDOMINIUMS, LTD.; PRESTWICKE HOMEOWNER'S ASSOCIATION; TIMBER TRAILS OF MCHENRY CONDOMINIUM ASSOCIATION; JOHN KUNZER; ARTISTIC ARTISTRY INC.; LYNETTE M. NUCK; EDWARD A. BURKE TRUST; RON and CANDI REICHE; TERRY L. RIDENOUR; RICK AND KAREN QUIGGLE, JOANNE L. WENKEL TR, BERNARD AND KATHLEEN G.

DUDDLESTON; DOUGLAS F .and CAROL S. McCONNELL; YANG CHITAI; EMIL J. ZEMANEK; CHICAGO TITLE AND LAND TRUST COMPANY; HELENE M. and JAMES P. TOAL; JOHN B. and MICHELLE M. PALMIERI; ALAN J. MROWKA; DAVID L. and PATTI S. BARNUM; JAMES W. RAY JR. Trust; MICHAEL LOVERGINE; MIKE'S AUTOMOTIVE SERVICES INC.; ROBERT W. and SYLVIA S. KOCH; JAMES D. and DIANE M. BIENIARZ; EDWARD J. JR. and NANCY A. STYGAR; PATRICK RYNDAK; PAUL N. FALLAW; STEVE and KELLY NELSON; TYLER R. NELSON; BRUCE SANSONE; BRUCE P SANSONE AND ASSOCIATES PC; JOHN ZAJICEK; LORRAINE K. HENELY TRUST; McHENRY STATE BANK TRUST 12874; THOMAS L. HENELY; LUCIFER'S CATHOUSE CANTINA TRUST; ROBERT GELMAN; GUENTER O. and KAREN A. SCHEEL; MARY MAURER; PEARL J. MATTHEWS; THOMAS P. MATTHEWS; PETER and JOYCE KOTTRA; DONALD and ALANA O'CONNOR; SUSAN HANDELSMAN; JOSEPHINE E. TAVOLACCI; SCOTT E. and BARBARA A. GESSERT; ADAM and KELLY LIEBMAN TRUST; SHIRLEY BUSSE; SCOTT W. and JOAN K. CASTELL; THOMAS M. SULLIVAN and DEBORAH A. KROL; CYNTHIA KROL; JOHN J. and SUSAN L. MCGORRIAN; EYRE RW ST FAMILY DECLARATION OF TRUST; VINCENT GIANGRASSO; KOHLS ILLINOIS INC.; CONSTANTINE ATHANS; KAREN TIRIO; KAREN SAVERD TIRIO; DOROTHY MUELLER; MATTHEW J. RYAN; MARK C. SMITH; RAYMOND A. and SUSAN L. SMITH; ALVIN M. and ROBYN M. THORSEN; JOHN R. and VIRGINIA D. PESCHKE; DAVID and JONI MAY; RYAN PETERS; ROBERT and MARY LOU HUTCHINSON; 1211 N. RIVER RD., LLC, LLISON, B W CLAWSON E V, LAND TRUST 114690; AACURATE RADIATION; DAVID KERRIGAN; I-CRUZ, LTD.; JASPER, BRIAN, and LAURA SANFILIPPO, JEFFREY SANFILIPPO; JOHN E. and SUSAN L. SANFILIPPO; SANFILIPPO FAMILY 1999 GST TRUST; STANLEY and PAULETTE BODNAR; LION HOLDINGS LLC; BROOKSIDE MEADOWS CONDOMINIUM ASSOCIATION, INC.; JOHN and SUSAN MCGORRIAN; WOLF REALTY INC.; GARY LECHNER; VIRGINIA PARK CONDOMINIUM ASSOCIATION; FOUR COLONIES CONDOMINIUM ASSOCIATION I; and SOMERSET CONDOMINIUM ASSOCIATION.